## BARKSDALE v. UNITED STATES et al.
### No. 1071.

District Court, W. D. South Carolina.
July 2, 1931.

James E. Taylor and Hicks & Johnston, all of Greenville, S. C., for plaintiff.

Joseph A. Tolbert, U. S. Atty., of Greenville, S. C., and J. C. Willcox, Acting Chief Atty., Veterans' Administration, of Columbia, S. C., for the United States.

Leon L. Rice, of Anderson, S. C., for defendants Lula Rochester and others.

WATKINS, District Judge.

By stipulation of counsel this case was submitted to me without a jury. There is practically no dispute as to the facts. The matter first came before me at Greenville during the April term of the court. At that time certain stipulated facts were admitted in the record and a limited amount of oral testimony was taken. Thereafter counsel for the government and for the plaintiff submitted written briefs. It is due to counsel to state that these briefs were unusually well prepared, stating the contentions of the parties with unusual force and clearness. Before the matter could be decided, counsel for certain of the individual defendants directed the attention of the court to the fact that he had failed to attend the trial on behalf of his clients through a misunderstanding and that certain minor defendants had not been properly before the court. Thereupon, these parties were properly brought before the court and a subsequent hearing of the cause was had at my office at Anderson, S. C., on June 30. By agreement all the testimony previously presented to the court was received as a part of the record and certain additional testimony was offered. This testimony, however, was of little consequence and served in no way to control a decision properly based upon the facts already in evidence. I find the facts to be as follows:

The plaintiff is a colored woman who at a very tender age married one Edgar Rochester some time prior to the year 1917. The said Edgar Rochester entered the military service of the United States during the month of October, 1917, was sent abroad, and died while in service, leaving of force a war risk insurance policy in the principal sum of $10,000, of which $5,000 was payable to plaintiff. Upon these facts the Bureau of War Risk Insurance began paying to the plaintiff as widow of the said deceased soldier the amounts payable under the terms of that policy. On December 18, 1920, more than a year after the soldier's death, the plaintiff, then being a widow, gave birth to an illegitimate child. This fact was reported to the local representative of the Red Cross organization, who in turn reported it to the Veterans' Bureau. In consequence of an investigation, the Veterans' Bureau discontinued the payment to plaintiff of the monthly installments of insurance payable to her as beneficiary under said policy on the ground that she was guilty of open and notorious illicit cohabitation and had thus forfeited her right to receive insurance benefits by virtue of the provisions of paragraph 5, § 22, of the War Risk Insurance Act, as amended, Act Oct. 6, 1917, § 2, 40 Stat. 400, and plaintiff now seeks recovery thereof. In the course of said investigation an examiner for the bureau took a statement from plaintiff in which she admitted the birth of the illegitimate child and in which she used the expression: "I have not been guilty of open and notorious illicit cohabitation though I confess that I have been guilty of the illicit cohabitation as mentioned in the said affidavit." In her affidavit plaintiff admitted sexual relations with one man for a period of about two months embracing five or six separate occasions, and also admitted that she was on intimate terms with the father of the illegitimate child from about Thanksgiving Day, 1919, to about June, 1920, having sexual intercourse with him once or twice each week during that time and receiving from him $15 or $16 each week to help her along for most of the time. This statement was taken by the examiner without plaintiff's having any counsel present and, so far as the record shows, without her being advised by any friend. The statement shows that, while she admitted the acts of sexual intercourse, she was strenuously denying, so far as her limited

intelligence could appreciate it, any guilt of open and notorious illicit cohabitation. She was strenuously claiming that her illicit relations with the two men in question were not generally known and were, therefore, not open and notorious. Some time subsequent to the date referred to she was married to her present husband, and there is no evidence from any source indicating that she has been in any way unfaithful to him since that marriage.

In considering the facts of the case I think a number of well-known circumstances, constituting what may be called the atmosphere of the case, must be taken into consideration. In the first place, plaintiff was only sixteen years old when she was first married. She was very ignorant, and when her husband was drafted and sent abroad, she had had but little experience with life. She is a member of a race but a short time removed from a condition of slavery and whose standards of morality have not had time to recover from the degrading effects of that condition. There is no evidence to satisfy me in any way that her conduct would bear the test of being classed as open and notorious in the sense used by the statute, nor that she ever lived with either of the men in the ordinary sense of cohabitation. The only facts supporting such a theory are the actual giving birth to the child and the subsequent admissions made to the representative of the bureau by an ignorant negro girl whose husband had been sacrificed on the altar of his country and, therefore, with neither him nor any other one to advise her of her rights. What she made known under said circumstances could not support the claim of open and notorious conduct in what she had previously done. I find, therefore, that the only evidence to support the charge of open and notorious illicit cohabitation is the giving birth to an illegitimate child and the subsequent admissions of this ignorant and unfortunate plaintiff as to what occurred. Certainly, she did not "take up" with any man and live in the house with him. If "cohabitation" is construed to mean what it primarily implies, living together in the same house, she has not been guilty of cohabitation in that sense. Personally, I would feel inclined to divest myself of any symptoms of "sexophobia" in dealing with a case of this sort. I would feel impelled to deal with people as I found them and to give such consideration to the ignorance, age, and environment of this plaintiff as the circumstances demand. I am reluctantly, however, compelled to decide as a matter of law under the admitted facts of the case that the plaintiff is not entitled to recover. The Circuit Court of Appeals of this circuit, in the case of King v. United States, 17 F.(2d) 61, has held that the giving birth to illegitimate children is the most convincing evidence of open and notorious illicit cohabitation. The result of this decision in my judgment will work an injustice and hardship. The act itself was adopted in conformity with the old pension laws, but it must be remembered that this is an insurance policy and not a pension. The amount here is payable under the terms of a policy, however liberal may have been its terms, because it was paid for and not as a mere gratuity. Even under the old pension laws the principal object of the provision was to prevent widows, who would lose their pensions if they married again, from obtaining the benefit of them while taking up with some man and living in open and notorious adulterous relations. Congress, I think very wisely, when the matter was subsequently called to its attention, repealed this provision. That, however, did not restore the rights of plaintiff if already forfeited, and I must hold, relying solely on the authority of the King Case, that her rights had been previously forfeited.

Whereupon, after due consideration, it is ordered and adjudged that the complaint herein be, and the same is, hereby dismissed, and that defendants have leave to enter up judgment for costs.