10333

### JAKAR v. JAKAR.

(102 S. E. 337.)

1. EVIDENCE—TESTIMONY THAT PLAINTIFF WAS INFORMED DEFENDANT HAD KILLED FORMER WIFE INADMISSIBLE AS HEARSAY IN ACTION FOR ANNULMENT.—In an action for annulment of plaintiff's marriage to defendant, testimony that she was informed that defendant had killed a former wife *held* inadmissible as hearsay.

2. MARRIAGE—EVIDENCE IN ACTION FOR ANNULMENT INSUFFICIENT TO SHOW MARRIAGE HAD NOT BEEN CONSUMMATED.—Where plaintiff seeking to annul her marriage for want of consent, testified that the marriage was never consummated by cohabitation, and that she and defendant occupied the same room some days, a finding that the marriage was never consummated was not warranted.

3. MARRIAGE—ANNULMENT ALLOWED ONLY ON PROOF OF DECEIT TOUCHING ESSENTIALS OF RELATION.—A marriage can be set aside on the ground of fraud only on proof of deceit touching matters constituting the essentials of the marriage relation, and a woman cannot procure annulment of a marriage because of the falsity of the man's representations as to his character, social standing, and fortune.

Before TOWNSEND, J., Richland, Summer term, 1919. Affirmed.

Action by Marie M. Jakar against Isaac Jakar to set aside a marriage. From a judgment denying relief, plaintiff appeals.

The report of the master and decree of the trial Judge are as follows:

Report of Master: This cause was referred to me by order of his Honor, Thomas Sease, presiding Judge, dated January 13, 1919, to take the evidence upon all the issues herein and make report thereof with my findings and conclusions of law and fact.

The summons and complaint were duly served upon the defendant on the 13th day of December, 1918, as shown by proof of service attached to the complaint, and the defendant gave no notice of appearance, and filed no plea in this cause.

The action is for the purpose of having declared null and void, on the ground of fraud and deceit, the marriage entered into between the plaintiff and defendant at Columbia, S. C., on the 25th day of September, 1918. I took the testimony of several witnesses offered by the plaintiff, which testimony is herewith reported, and upon this testimony I make the following findings and conclusions, to wit:

(1) The defendant, Isaac Jakar, first met the plaintiff a short time, perhaps a week, before the marriage. He was accompanied in his first visit and several of his visits by another man who he introduced as Capt. Pullen, though he was in reality a lieutenant, as he himself seems to have corrected the error. The defendant visited the plaintiff first at the place where she was employed as a milliner in the city of Columbia, and then saw her at the Y. W. C. A., where she was making her home, on several occasions.

(2) The defendant represented himself as of Belgian birth, a physician who had been an instructor in a medical college in Brussels, and stated that he was an officer with some 20 physicians employed under him, at the hospital at Camp Jackson. He also represented himself as a man of considerable and independent means and extensive education.

(3) He pressed his suit with much ardor and insisted on hastening the marriage upon the plea that the government would make him an allowance on account of being married for his rooms and quarters if he was married, and it was necessary for this purpose that he should be married before the 25th of September to get his application for apartments for officers into Washington by the 1st of the month.

(4) These statements as to his means, as to his rank, and as to his education were made in the presence of the secretary of the Y. W. C. A., and of Miss Smith, a friend of the plaintiff, and in the presence of Dr. Pullen, who was a commanding officer in the United States army, in the medical service. He also stated that he spoke ten different languages.

(5) The name of the plaintiff before her marriage was Marie Corvette, who had come to this country from Belgium 12 years ago, and the home of her parents was Rowesville, in Orangeburg county, but she had worked for nine seasons as a milliner with Haltiwanger, in Columbia, and was at this time working there and was rooming at the Y. W. C. A.

(6) Through his representation as a citizen of Belgium he seems to have been able to open a way of communication and social relations with the plaintiff.

(7) During his courtship he seemed to have spent his money freely and acted ostensibly as a man of means, entertaining the plaintiff at the best hotels and restaurants in the city.

(8) He furnished the usual jewelry, to wit, a wedding ring and a diamond ring, which latter, however, plaintiff says, was paste.

(9) Soon after the marriage, he succeeded in borrowing $50 from the plaintiff's scanty supply, by misrepresentation, and he never paid that back. He also borrowed from a friend of the plaintiff a small sum, and the plaintiff paid that back. He undertook to give a check on a Western bank, and that bank reported he had no funds. He became very harsh and cruel almost immediately after the marriage, and it soon developed that all of his statements about his position, his wealth, and his education, and even the land from which he came, were entirely false. The evidence tends to show that he killed a former wife. He brought other people into his wife's bedroom when she was sick. He visited her father's home in Orangeburg county, and tried to take her away by force, and made an assault on her father with a pistol, and acted more like a maniac than a human being.

(10) The evidence of plaintiff, and this is undisputed, shows that the marriage was never consummated by cohabitation.

Conclusion: In my opinion, the alleged marriage was procured by fraud, misrepresentation, and deceit, and was not and is not a valid contract, and it should be set aside and declared null and void.

Decree of Circuit Court: This case comes on to be heard on the master's report of his findings of fact and conclusions of the law.

I have carefully considered the report of the testimony, and concur generally in the master's findings, except his findings that the evidence tended to show defendant had killed a former wife. The evidence tending to show that was incompetent hearsay, and cannot be considered in Court. The plaintiff's testimony that the marriage was never consummated by cohabitation is inconsistent with the circumstances, to which she testifies, that she and defendant occupied the same room for several days after the marriage, and fails to establish to the satisfaction of the Court the jurisdictional fact that the marriage was never consummated by cohabitation. *Davis v. Whitlock,* 90 S. C. 242, 73 S. E. 171, Ann. Cas. 1913d, 538; Civil Code, sec. 3753.

But, if I should be in error in finding that the evidence fails to establish the fact "that the marriage contract was not consummated by a cohabitation of the parties thereto," I am still of the opinion that the complaint should be dismissed. The contract, from its peculiar nature and on general grounds of public policy, the law regards as especially sacred and inviolate. It cannot be voided or set aside on the ground of fraud, except on the most plenary and satisfactory proof of deceit and imposition, touching matters which constitute the essentials of marriage relation. *Reynolds v. Reynolds,* 85 Mass. (3 Allen) 605; *Foss v. Foss,* 94 Mass. (12 Allen) 26; *Boehs v. Hanger,* 69 N. J. Eq. 10, 59 Atl. 904. "False representation of a party as to his character, social standing or fortune do not constitute

such a fraud on the opposite party as to avoid a marriage induced thereby," even though he conceal the fact that he has served a term in the penitentiary." *Wier v. Still,* 31 Iowa 107; *Fisk v. Fisk,* 6 App. Div. 432; *Williamson* v. *Williamson,* 34 App. D. C. 534, 30 L. R. A. (N. S.) 301, and note. "The fraudulent representations for which a marriage may be annulled must be of something essential to the marriage relation—of something making impossible the performance of the duties and obligations of that relation or rendering its assumption and continuance dangerous to health or life." *Lyon v. Lyon,* 230 Ill. 371, 82 N. E. 852, 13 L. R. A. (N. S.) 996, 12 Ann. Cas. 25, 27. The misrepresentations made by the defendant in the case at bar were not of such a character as would afford grounds for the annulment of the marriage.

It is, therefore, ordered and adjudged that the conclusions of the master be reversed, and the complaint dismissed.

*Mr. W. W. Hawes,* for appellant, cites : *As to error in his Honor reversing the master's finding of fact "that marriage had not been consummated by cohabitation," and in failing to hold that plaintiff, having promptly repudiated the supposed contract on discovery of the deception practiced, had placed herself fully within the proviso of the statute, and was entitled to the relief prayed for:* 90 S. C. 242; 61 S. C. 34; 57 S. C. 493; 44 S. C. 378; 63 L. R. A. 92; 1 Strobhart's Law 396; 31 Iowa 107; 18 R. C. L., sec. 78. *As to public policy:* 44 S. C. 204. *Consent as a necessary element of marriage:* 66 Neb. 676; 63 L. R. A. 92 (174 N. Y.) ; 43 N. J. Eq. 411; 44 S. C. 195; 66 Minn. 329. *False representation—wealth:* Annotated cases 1915d, 216 (Iowa) ; 107 N. Y. 76. *Materiality of representations*: 150 N. Y. 176; 34 L. R. A. 156; R. C. L., vol. XVIII, sec. 36, and citations thereunder; 8 Misc. (N. Y.) 587; 6 Misc.

(N. Y.) 355; 85 Mass. (3 Allen) 611. *The law does not wholly outlaw the credulous from its protection:* 62 N. Y. 651; 83 N. Y. 436.

January 26, 1920.

The opinion of the Court was delivered by Mr. Justice Watts.

This action was for the purpose of having set aside as null and void for want of consent a marriage entered into between the plaintiff and defendant on September 25, 1918. The defendant was served with summons and complaint on December 13, 1918, and failed to serve notice of appearance, answer or demur.

The case was referred to A. D. McFadden, Esq., on January 13, 1919, by his Honor, Judge Sease, to hear and determine all issues of law and fact, and report the same to the Court. He filed his report March 14, 1919, recommending that the marriage be set aside. His Honor, Judge Townsend, by a decree made May 21, 1919, reversed the report of the master, and dismissed the complaint. For a proper understanding of the case, both the report of the master and decree of Judge Townsend should be reported in the case. From the decree of Judge Townsend plaintiff appeals, and by three exceptions imputes error.

Judge Townsend, by his decree, concurs generally in the master's findings, except as to his findings that the evidence tended to show that the defendant had killed a former wife. This evidence he holds to be incompetent and hearsay, and cannot be considered in Court. There is no doubt it is incompetent, but in justice to the master the defendant made default and failed to appear; and did not object to the evidence, and frequently incompetent evidence becomes competent, when admitted without objection, and the whole evidence in the case portrayed the defendant as such an

adventurer and scoundrel that the master considered this statement and no doubt thought the defendant was capable of doing this very thing.

His Honor found that the master was in error in finding that the marriage was never consummated by cohabitation that that finding is inconsistent with the circumstances, to which she testifies, that she and the defendant occupied the same room several days after the marriage, and fails to establish to the satisfaction of the Court the jurisdictional fact that the marriage was never consummated by cohabitation. His Honor puts his opinion from the circumstances against the sworn, unimpeached evidence of the plaintiff that there was no cohabitation.

Here is a plain, simple, foreign girl, a milliner in the city of Columbia, away from her parents some distance (they live at Rowesville, S. C.), who is taken in by an adventurer and heartless scoundrel. She swears most positively that there was no cohabitation between them after marriage; explains that the influenza was prevailing at that time; that the defendant was detained at Camp Jackson; that she took the disease and was confined to her room; that the defendant was enraged at her being sick. If she needed circumstances to back up her testimony, we have here a strong circumstance that the defendant was angry on account of her sickness, because it foiled him and baffled him in his purpose to cohabit with her.

On the question of cohabitation the decree of the Circuit Court is wholly without evidence to support it. Her positive evidence, unimpeached, supports her evidence, supported by all the circumstances in the case, his detention at Camp Jackson during the four days she had the room, her sickness, and by reason of which his lecherous desires were foiled, and on this the finding of his Honor is reversed.

As to the other ruling of his Honor, and the reasons given and authorities quoted which actuated him to reverse the

findings of the master and in dismissing the complaint, a much more serious question is presented.

This State will not tolerate divorces, and the contract of marriage is held very sacred, and the annulling of the same contrary .to public policy. Every case must be judged by the particular facts of the case. No one will question, after hearing the evidence, that the plaintiff was credulous to the extent of being almost simple; that she was badly imposed upon by a villain of the deepest dye, an accomplished liar, "who did not think the truth, much less speak it;" one who robbed her and her friend by borrowing money, with no intent to pay it, giving bogus checks, with no funds to pay the same, in violation of the criminal laws of the State; one who is besmirched with the accusation of dealing foully with his former wife. Under all the facts of the case, and the gross fraud perpetrated on the plaintiff by the defendant, there being not the slightest suspicion of collusion in this proceeding between the parties the absence of divorce laws in this State, I think the judgment of the Circuit Court should be reversed, and the marriage declared not to be a valid contract, and is set aside and declared to be null and void. But a majority of the Court think different, and the judgment of the Circuit Court is affirmed.

MR. JUSTICE GAGE. I concur in the opinion of Mr. Justice Watts.

MR. JUSTICE HYDRICK. I concur in the opinion of the Circuit Court.

MR. CHIEF JUSTICE GARY. I dissent (from the opinion of Mr. Justice Watts) for the reasons stated in the decree of his Honor, the Circuit Judge:

MR. JUSTICE FRASER. I cannot concur with Mr. Justice Watts. I think the statement that he construes to be a statement of fact is not a statement of fact, but a conclusion of law. Ordinarily the word "cohabit" means living

together as man and wife.   Under our statute, I think a single act is enough to shut the door to an annulment of marriage.   The testimony does not satisfy me that the plaintiff's cause is within the statute.   This is a hard case, but the integriy of our marriage law is at stake, and I think it better that an individual should suffer than that the law itself should be annulled.