## 23603

E.D.M., Respondent v. T.A.M., Appellant.

(415 S.E. (2d) 812)

Supreme Court

*Kathleen P. Jennings,* Greenville, *for appellant.*

*Robert M. Rosenfeld* of *Porter & Rosenfeld,* Greenville, *for respondent.*

Heard Jan. 20, 1992.

Decided March 16, 1992.

MOORE, Justice:

This is an action for separate support and maintenance. Appellant (Husband) appeals the denial of his counterclaim for an annulment and the award of alimony and attorney's fees to respondent (Wife). We affirm in part and reverse in part.

## FACTS

Wife commenced this action in April 1990. Husband counterclaimed for an annulment of the marriage on the ground of fraud alleging Wife concealed her psychological problems and resulting sexual incapacity. It is undisputed the parties never had penile-vaginal intercourse before or after their marriage in 1985. The extent of their sexual activity was infrequent oral sex performed by Husband upon Wife.

In September 1990, the family court issued a decree of separate support and maintenance awarding Wife $500 per month alimony, equitably dividing the marital property 80% to Husband and 20% to Wife, and awarding Wife $2,300 in attorney's fees. Husband's request for an annulment was denied. In October 1990, the family court amended its order by reducing alimony to $300 per month. Husband appeals.

## ISSUES

(1) Is Husband entitled to an annulment on the ground of fraud and lack of cohabitation?

(2) Is the award of alimony to Wife proper?

(3) Is the award of attorney's fees to Wife proper?

## DISCUSSION

Husband contends the family court erred in refusing an annulment of the marriage because Wife induced him to marry her by fraud and the marriage was never consummated.

On appeal from a family court order, this Court has authority to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence. *Rutherford v. Rutherford,* 414 S.E. (2d) 157 (S.C. 1992); *Miller v. Miller,* 299 S.C. 307, 384 S.E. (2d) 715 (1989).

The family court has jurisdiction to determine any issue affecting the validity of a contract of marriage. S.C. Code Ann. § 20-1-510 (1985); *see also* § 20-7-420(5) (1985 and Supp. 1991). Section 20-1-530 (1985) provides:

> If any [marriage] contract has not been consummated by the cohabitation of the parties thereto the court may declare such contract void for want of consent of either of the contracting parties or for any other cause going to show that, at the time the supposed contract was made, it was not a contract.

This statute abrogated the common law right to annul a marriage for want of legal consent by adding the "no cohabitation" requirement. *State v. Sellers*, 140 S.C. 66, 134 S.E. 873 (1926). Even a marriage contracted without legal consent becomes binding once there has been cohabitation between the parties. *Id.; Davis v. Whitlock*, 90 S.C. 233, 73 S.E. 171 (1911).[1]

Thus, under § 20-1-530, a party seeking an annulment on grounds other than legal incompetence to contract marriage must show (1) lack of legal consent or that the marriage was not a valid contract and (2) no cohabitation between the parties.

First, Husband claims the marriage contract was invalid because he was induced by fraud to marry Wife.

He alleges Wife did not reveal before marriage the psychological problems which resulted in her sexual incapacity. False representations regarding one's character, social standing, or fortune do not constitute fraud sufficient to annul a marriage. *Jakar v. Jakar*, 113 S.C. 295, 102 S.E. 337 (1920). Husband claims, however, sexual capacity qualifies as a ground for annulment under *Jakar* as "something essential to the marriage relation . . . making impossible the performance of the duties and obligations of that relation." 102 S.E. at 339.

We need not decide whether concealment of a known sexual dysfunction is fraud sufficient to justify an annulment. We conclude the record in this case does not support a factual finding Wife concealed an incapacity for sexual relations.

The parties shared a bed on many occasions during their five-year courtship but agreed they would not engage in premarital sex. Wife testified she told Husband about her emotional problems before their marriage. Further, she testified Husband knew about her problem with sexual intercourse from an "engaged encounter" they attended before they married. Wife was never diagnosed or treated for psychological problems until 1987, two years after the parties married. Hus-

---

[1] This statute does *not* apply and cohabitation does not validate a marriage by a person legally *incompetent* to contract marriage, i.e. a bigamous or incestuous spouse. *Hughey v. Ray*, 207 S.C. 374, 36 S.E. (2d) 33 (1945); *Davis v. Whitlock, supra.*

band introduced no evidence Wife knew the extent of her sexual problems before the marriage. He admits, in fact, she did not know until she began treatment with the psychiatrist in 1987 after the parties had tried and failed to engage in sexual intercourse.

The party attacking the validity of a marriage bears the burden of proof. *Yarbrough v. Yarbrough,* 280 S.C. 546, 314 S.E. (2d) 16 (Ct. App. 1984). We conclude Husband failed to prove by a preponderance of the evidence he was entitled to an annulment on the ground of fraudulent inducement. Moreover, despite Husband's assertions to the contrary, the parties' marriage was consummated by cohabitation and therefore § 20-1-530 bars an annulment even if fraud were proved in this case.

"Cohabitation" has been defined as "living together in the same house." *Barksdale v. United States,* 4 F. Supp. 207 (D.S.C. 1931). Husband argues, however, this Court should define cohabit to require actual sexual intercourse. This Court has never viewed actual sexual intercourse as distinguishable from other sexual activity in determining marital matters. In *RGM v. DEM,* — S.C. —, 410 S.E. (2d) 564 (1991), for instance, we rejected an argument that homosexual activity could not constitute adultery because there was no actual sexual intercourse. Here, the parties admittedly lived together, shared the same bed, and engaged in at least minimal sexual activity. We conclude this evidence of living together in an intimate relationship supports a finding of cohabitation.

Next, Husband contends Wife should not have been awarded alimony. The factors to be considered in awarding alimony in a separate support and maintenance action are:

(1) financial condition of the payor and needs of the payee;
(2) age and health, respective earning capacities, and individual wealth;
(3) payee's contribution to joint wealth;
(4) parties' conduct;
(5) respective necessities;
(6) payee's standard of living;
(7) duration of the marriage;
(8) ability of the payor to pay;
(9) actual income of the parties.

*Rivenbark v. Rivenbark,* 301 S.C. 175, 391 S.E. (2d) 232 (1990).[2]

In this case, the parties separated after only four and one-half years of marriage. At the time, both were in good health and were thirty-one years of age. Both have college degrees. Husband was earning $48,000 per year as an engineer; Wife was earning $20,000 in an administrative job at a college. Wife's psychological problems do not affect her ability to work.

During the marriage, Husband paid all the household bills and provided the money for a downpayment on the marital home. His total financial contribution in support of the marriage was $187,497; Wife's contribution was $11,300. In addition, Husband maintained the house and did extensive home improvements himself whereas Wife contributed very little. At the time of separation, Wife had her own savings totalling $7,000. Her monthly medical bills for psychiatric treatment and other medical complaints totalled $506.

In light of the factors to be considered, we agree with Husband that Wife is not entitled to an award of alimony.[3] Wife made only minor contributions to the marriage and is able to support herself. She left the marriage with individual savings of $7,000, plus Husband was ordered to pay her $5,666 for her equity in the marital home. Wife's psychiatric treatment was to continue for two years after the May 1990 separation and her medical expenses will likely decrease. Also, she has health insurance which pays a certain yearly amount toward psychiatric treatment and the $506 is not a constant monthly amount.

Finally, Husband contests the award of attorney's fees to Wife. In determining whether an attorney's fee should be awarded, the following factors should be considered:

(1) the party's ability to pay his/her own attorney's fee;
(2) beneficial results obtained by the attorney;

---

[2] This action was filed before the effective date of S.C. Code Ann. § 20-3-130 (Supp. 1991) which sets forth the factors to be considered in awarding alimony.

[3] Husband also contends he is entitled to reimbursement for the payments he made pursuant to a temporary order. Husband did not appeal the temporary order and this issue is not before the Court.

(3) the parties' respective financial conditions;

(4) effect of the attorney's fee on each party's standard of living.

*Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E. (2d) 313 (1991).

Applying these factors here, we conclude Wife is not entitled to an award of attorney's fees based on the relatively small amount in question and her ability to pay from income earned and savings. Moreover, in light of our reversal of the alimony award, the results achieved by Wife's counsel were not beneficial.

Accordingly, the family court's denial of an annulment is Affirmed and the awards of alimony and attorney's fees are Reversed.

HARWELL, C.J., FINNEY and TOAL, JJ., and ALEXANDER M. SANDERS, Jr., Acting Associate Justice, concur.