WILLIAMS, J.:
**170 In this domestic relations matter, Blago Metodiev Bojilov (Husband) appeals the family court's final divorce decree, arguing the court erred in (1) awarding Susan Schaefer Bojilov (Wife) $200 per month permanent periodic alimony, (2) awarding Wife sole legal and physical custody of the parties' minor child (Son), (3) awarding Wife discretion in obtaining a passport for Son, (4) classifying Husband's Bulgarian Fibank account as a marital asset, (5) apportioning Husband insufficient equity in the marital residence, and (6) awarding Wife $30,000 for attorney's fees. Wife cross-appeals, asserting the family court erred in (1) apportioning Wife insufficient equity in the marital residence; (2) not including Husband's unaccounted-for funds in the equitable distribution; (3) making Wife pay Husband his equitable distribution in post-tax, non-retirement assets; and (4) not awarding Wife attorney's fees **171 incurred while defending Husband's motion to reconsider. We affirm in part and reverse in part.
FACTS/PROCEDURAL HISTORY
Husband and Wife married in Berkeley County, South Carolina, on August 8, 1998. When the parties married, Husband was a Bulgarian citizen and sought asylum in the United States. In lieu of asylum, Husband voluntarily returned to Bulgaria in February 1999 and returned to the United States in *797 March 2001. Wife remained in South Carolina and resided at 104 Duncan Court-a residence Wife purchased from her previous husband in 1988. In February 2001, Wife paid the remaining $36,000 she owed on the 104 Duncan Court mortgage with inheritance Wife received from her father.[1] In October 2006, Wife sold 104 Duncan Court and utilized $100,000 of the sale proceeds towards the down payment for the parties' new residence.
Wife obtained an associate's degree in Automotive Technology and in the Arts. Wife worked throughout the marriage, except for periods of unemployment for fourteen months in 2010 and 2011, and for two months in 2013. Husband received some post-secondary education in Bulgaria and obtained various certificates in South Carolina. Husband earned the majority of the parties' income during the marriage. However, due to income from a trust that represented the majority of Wife's inheritance from her parents (the nonmarital Brown Advisory accounts), the parties' net incomes were similar. Throughout the marriage, Husband's Bank of America bank statements exhibited numerous deposits in the $400 to $1,000 range, all of which were unreported in Husband's financial declarations. In 2011, Husband opened a bank account with Fibank in Bulgaria. Husband contended the opening deposit of $32,120 was a nonmarital gift from his parents to hold in trust for his parents' care. Husband failed to disclose the Fibank account in his initial interrogatory answers and financial declaration.
The couple had one child from the marriage; Son was twelve years old at the time of the divorce hearing. Due to his autism spectrum disorder (autism ) and attention deficit hyperactivity disorder (ADHD), Son required substantial care and thrived **172 on stability. Despite Son's considerable care needs, Husband traveled to Bulgaria annually, leaving Wife and Son for three or more weeks at a time.[2] Husband also engaged in an extra-marital affair including overnight stays with his paramour.
On August 13, 2013, Wife filed an action in family court, seeking a divorce on the grounds of adultery;[3] alimony; sole legal and physical custody of Son; child support; equitable division of the marital estate; certain restraining orders; and an award of attorney's fees and costs. Husband answered and counterclaimed, seeking joint custody; Wife's cooperation in obtaining a passport for Son to go to Bulgaria; equitable division of the marital estate; certain restraining orders; and an award of attorney's fees and costs.
At trial, witness testimony revealed Husband and Wife often disagreed on the appropriate schooling and medical treatment for Son's special needs. Husband advocated for completely mainstreaming Son in school and discontinuing Son's ADHD medications. Conversely, Wife agreed with educational and health provider suggestions that Son remain in certain special needs classes and continue his ADHD medications. Husband claimed that he and Wife also disagreed on the appropriate diet, exercise, and sleep regimen for Son. However, Husband did not adhere to the diet he proposed for Son, nor did he maintain Son's sleep schedule. Dr. Poon, Son's developmental behavioral pediatrician, testified medical staff reported that Husband tried to intimidate them by showing up at the medical facility without an appointment. The guardian ad litem (GAL) also testified that Son's medical and educational providers reported to the GAL that on certain occasions Husband was confrontational when he disagreed with them.
On January 29, 2015, the family court issued a final divorce decree, granting Wife a divorce on the ground of Husband's adultery. The court found Husband's testimony was not credible and believed Husband consistently presented false evidence through his affidavits, financial declarations, deposition testimony, and trial testimony. With the exception of the **173 marital residence, the court awarded a 50/50 equitable apportionment of the marital estate. With regard to the marital *798 residence, the court apportioned 60% to Wife and 40% to Husband. Moreover, the court awarded Wife exclusive use, possession, and ownership of the marital residence; sole legal and physical custody of Son; and instructed that Wife was not required to obtain a passport for Son.
Wife reported a gross income of $2,882.17 per month from wages with a total gross monthly income of $3,990.07 when adding Wife's inheritance interest from the nonmarital Brown Advisory accounts. The court noted Wife had invaded the nonmarital Brown Advisory accounts during the last few years of the marriage for household expenses, and Wife's interest in the accounts would continue to decline if she had to invade them post-separation. The court found that Husband grossly overstated his post-separation monthly expenses, and as evident from Husband's bank statements, that Husband earned at least $200 per month in additional income from odd side jobs that he failed to list on his financial declarations.[4] After imputing an additional income of $200 per month to Husband, which brought Husband's monthly gross income to $3,420.53, the court ordered Husband to pay $200 per month to Wife in permanent periodic alimony. In addition, the court ordered Husband to pay $512 per month in child support. Further, the court awarded Wife $30,000 in attorney's fees and costs related to the divorce action.
Thereafter, Husband and Wife each filed a motion to alter or amend the judgment. The family court denied both motions on March 30, 2015. The family court also denied Wife's request for attorney's fees and costs for defending Husband's motion to alter or amend. This cross-appeal followed.
STANDARD OF REVIEW
The appellate court reviews decisions of the family court de novo. Stoney v. Stoney , 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) (per curiam). In a de novo review, the appellate court is free to make its own findings of fact but must remember the family court was in a better position to make credibility determinations.
**174 Lewis v. Lewis , 392 S.C. 381, 385, 709 S.E.2d 650, 651-52 (2011). "Consistent with this de novo review, the appellant retains the burden to show that the family court's findings are not supported by a preponderance of the evidence; otherwise, the findings will be affirmed." Ashburn v. Rogers , 420 S.C. 411, 416, 803 S.E.2d 469, 471 (Ct. App. 2017). On the other hand, evidentiary and procedural rulings of the family court are reviewed for an abuse of discretion. Stoney , 422 S.C. at 594 n.2, 813 S.E.2d at 486 n.2.
LAW/ANALYSIS
I. Husband's Appeal
On appeal, Husband argues the family court erred in (1) awarding alimony to Wife, (2) awarding Wife sole custody of Son, (3) awarding Wife discretion in obtaining a passport for Son, (4) apportioning Husband insufficient equity in the marital residence, (5) classifying Husband's Bulgarian bank account as a marital asset, and (6) awarding Wife attorney's fees. We address each argument in turn.
A. Alimony
First, Husband contends the family court erred in ordering him to pay Wife $200 per month in permanent periodic alimony. We disagree.
"Permanent[ ] periodic alimony is a substitute for support which is normally incidental to the marital relationship." Butler v. Butler , 385 S.C. 328, 336, 684 S.E.2d 191, 195 (Ct. App. 2009). "Alimony should ordinarily place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage." Hinson v. Hinson , 341 S.C. 574, 577, 535 S.E.2d 143, 144 (Ct. App. 2000) (per curiam). The family court has a duty to formulate an alimony award that is "fit, equitable, and just if the claim is well[-]founded." Allen v. Allen , 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct. App. 2001).
In making an alimony award, the family court must consider the following statutory *799 factors: (1) the duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably **175 anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; (12) prior support obligations; and (13) any other factors the court considers relevant. S.C. Code Ann. § 20-3-130(C) (2014).
Specifically, Husband argues the family court erred in (1) failing to consider Wife's nonmarital property and (2) failing to make a finding of Wife's need for alimony and Husband's ability to pay.
We find the family court did not err in awarding alimony to Wife. The family court analyzed the statutory factors extensively in determining its award. Among them, the family court stated Husband and Wife were in a marriage of about sixteen years, and found Husband's adultery and habitual deceit contributed to the demise of the marriage. The court found that, after 2010, Husband earned a majority of the parties' income, with a net income of $2,334.21. However, the parties' net monthly incomes were similar due to Wife's $1,942.53 net income from wages and Wife's $1,107.90 income from the nonmarital Brown Advisory account. The family court found Wife's monthly expenses were reasonable and that Wife's September 2013 and November 2014 financial declarations reflected a post-separation reduction in her monthly expenses to $4,874.84. Conversely, the family court found Husband grossly overstated his monthly expenses and failed to report consistent income of at least $200 per month from side jobs. As a result, the court imputed $200 per month to Husband in additional income.
Regarding Husband's claim that the family court erred in failing to consider Wife's nonmarital property, we find the court explicitly considered Wife's nonmarital Brown Advisory accounts in finding the parties had similar incomes. Moreover, the court found Wife invaded, and effectively reduced the value of, her nonmarital Brown Advisory accounts to cover pre-separation household expenses, and if Wife were required to continue invading her nonmarital property post-separation, her anticipated income would decline. The court also stated that Wife should not have to liquidate her nonmarital Brown Advisory accounts to pay ongoing expenses. Thus, we find **176 competent evidence in the record that demonstrates the family court considered Wife's nonmarital property in awarding alimony. See Lewis , 392 S.C. at 392, 709 S.E.2d at 655 (providing the appellant bears the burden of convincing the appellate court that the preponderance of the evidence is against the family court's findings).
Based on our de novo review of the evidence, we find the family court's alimony award is appropriate. See id. at 384, 709 S.E.2d at 651 (holding the appellate court may find facts in accordance with its own view of the preponderance of the evidence); Allen , 347 S.C. at 184, 554 S.E.2d at 424 (stating the family court has a duty to formulate an alimony award that is "fit, equitable, and just if the claim is well[-]founded"). Accordingly, we affirm the family court's alimony award.
B. Custody
Husband contends, based upon the evidence presented, the family court erred in not awarding the parties joint legal custody of Son because (1) the record did not support the negative findings against Husband and (2) the finding that Husband repeatedly intimidated and bullied caretakers was based on inadmissible hearsay and improper pitting of witnesses. We address each argument in turn.
i. Negative Findings Against Husband
Husband argues the record does not support the family court's findings that Husband was "unwilling to accept other's viewpoints," that he was a "disruptive influence" at meetings, and that the parties would be unable to effectively co-parent so as to foreclose the possibility of joint legal custody. We disagree.
*800 The controlling considerations in child custody cases are the welfare and the best interests of the child. Woodall v. Woodall , 322 S.C. 7, 11, 471 S.E.2d 154, 157 (1996). In making its custody determination, "[t]he family court must consider the character, fitness, attitude, and inclinations on the part of each parent as they impact the child," and it should also consider "the psychological, physical, environmental, spiritual, educational, medical, family, emotional[,] and recreational aspects of the child's life." Id. "[A]ll the conflicting rules and **177 presumptions should be weighed together with all of the circumstances of the particular case, and all relevant factors must be taken into consideration." Id. "Although there is no rule of law requiring custody be awarded to the primary caretaker, there is an assumption that custody will be awarded to the primary caretaker." Patel v. Patel , 359 S.C. 515, 527, 599 S.E.2d 114, 120 (2004).
In the instant case, the family court considered a wide range of issues when determining the welfare and best interests of Son, including: each parent's character, fitness, attitudes, attributes, and resources; the opinions of third parties; and the age and health of Son. The family court found that Wife was Son's primary caretaker and that Wife was more active in overseeing and arranging Son's autism treatment and more involved in Son's educational development. Further, Son's teacher testified Son made substantial improvement since Husband and Wife separated in September 2013, and the family court awarded Wife primary physical custody of Son. Employees of Son's daycare also recalled Husband only coming once or twice a year to pick Son up, which was consistent with testimony of other witnesses' accounts regarding Husband's daily parental duties. The family court considered Husband's conduct, including: annually traveling to Bulgaria, leaving Son and Wife for three or more weeks at a time; sometimes staying out late at night; and leaving Son and Wife alone overnight when he met with his paramour.
In considering the totality of the circumstances in this case, we find the preponderance of the evidence supports the view that it is in Son's best interest to award Wife sole legal and physical custody of Son. See Woodall , 322 S.C. at 11, 471 S.E.2d at 157 ("The welfare and best interests of the child are paramount in custody disputes."); Parris v. Parris , 319 S.C. 308, 310, 460 S.E.2d 571, 572 (1995) ("In making custody decisions the totality of the circumstances peculiar to each case constitutes the only scale upon which the ultimate decision can be weighed."). Accordingly, we affirm the family court's finding on this issue.
ii. Admission of the GAL's Testimony
Husband further argues the family court erred by admitting the GAL's testimony over Husband's objections on the **178 grounds of inadmissible hearsay and improper pitting of witnesses. We disagree.
"Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted." Jackson v. Speed , 326 S.C. 289, 304, 486 S.E.2d 750, 758 (1997). Pitting of a witness refers to a question that asks one witness to comment on the veracity or truthfulness of another witness. See Burgess v. State , 329 S.C. 88, 91, 495 S.E.2d 445, 447 (1998) (stating it is improper for a solicitor to ask a defendant "to comment on the truthfulness or explain the testimony of an adverse witness" such that "the defendant is in effect being pitted against the adverse witness"). Witnesses are generally not allowed to testify as to whether another witness is telling the truth. Id. However, to warrant reversal based on the erroneous admission or exclusion of evidence, the complaining party must show both error and resulting prejudice. Timmons v. S.C. Tricentennial Comm'n , 254 S.C. 378, 405, 175 S.E.2d 805, 819 (1970). When evidence is merely cumulative to other evidence, its admission is harmless and does not constitute reversible error. S.C. Dep't of Soc. Servs. v. Smith , 343 S.C. 129, 140, 538 S.E.2d 285, 290-91 (Ct. App. 2000) ; see also Burgess , 329 S.C. at 91, 495 S.E.2d at 447 (holding the petitioner was not prejudiced by improper witness pitting in light of the other evidence presented in the case).
Husband contends Wife tried to pit the GAL's testimony-regarding statements that witnesses made to the GAL concerning *801 Husband's intimidating behavior-against in-court statements made by the same witnesses. Specifically, Husband objected to Wife asking the GAL whether Dr. Poon's testimony at trial, regarding Husband's intimidating and bullying behavior, was more or less damaging to Husband than previous statements Dr. Poon made to the GAL regarding Husband. Husband contends the GAL's testimony was inadmissible hearsay because Wife offered the testimony to prove Husband was aggressive and disruptive.
Regarding Husband's hearsay argument, we find the GAL's testimony was not inadmissible hearsay. A GAL's testimony and report, which contains evidentiary materials such as hearsay statements from persons interviewed by the GAL, is admissible if the report is made available to the **179 parties and the testifying witnesses are subject to cross-examination. See Richmond v. Tecklenberg , 302 S.C. 331, 334, 396 S.E.2d 111, 113 (Ct. App. 1990) (admitting the GAL's testimony and report over hearsay objections when the GAL interviewed forty-one witnesses, twenty of whom testified; the names of all persons interviewed were made available to counsel; each could have been deposed by the mother's counsel; and counsel had the full right to cross-examine the testifying witnesses); Collins v. Collins , 283 S.C. 526, 530, 324 S.E.2d 82, 85 (Ct. App. 1984) ("[W]he[n] the [GAL's] report contains statements of fact, the litigants are entitled to cross-examine the [GAL] and any witnesses whose testimony formed the basis of the [GAL's] recommendation."). The GAL interviewed sixteen witnesses; seven of the sixteen testified, including Dr. Poon. The GAL's report and the names of the witnesses were available to Husband. Husband had the opportunity to cross-examine the GAL and the testifying witnesses who formed the basis of the GAL's opinion. We find no reversible error.
Regarding Husband's pitting argument, we find Wife's line of questioning was an improper pitting of witness testimony.[5] Wife improperly asked the GAL to comment on the veracity of Dr. Poon's testimony by asking the GAL to compare Dr. Poon's in court testimony against Dr. Poon's previous statements to the GAL. Nonetheless, we find that Husband was not unfairly prejudiced by this testimony. See State v. Kelsey , 331 S.C. 50, 70, 502 S.E.2d 63, 73 (1998) (stating that although it is improper for counsel to question a witness in such a manner as to force the witness to attack the veracity of another witness, "improper 'pitting' constitutes reversible error only if the accused was unfairly prejudiced"). The GAL's testimony was cumulative to other properly-admitted evidence illustrating that Husband was aggressive and disruptive. See Smith , 343 S.C. at 140, 538 S.E.2d at 290-91 (stating when evidence is merely cumulative to other evidence, its admission is harmless and does not constitute reversible error). Without objection, the GAL's report was placed into evidence; the report included accounts from numerous witnesses that stated Husband physically intimidated medical and **180 educational providers. In addition, without objection, the GAL testified she observed the same behavior that other witnesses complained of-"the overbearing physical presence; standing up during meetings; authoritative assertion of his position"-at Husband's deposition. Dr. Poon testified medical staff at the facility reported that Husband tried to intimidate them by showing up without an appointment. We find that any error in regard to pitting was not unfairly prejudicial to Husband and find no reversible error.
Accordingly, we affirm the family court's award of sole physical and legal custody of Son to Wife.
C. Passport
Husband argues the family court erred in denying his request to require Wife to cooperate in obtaining a passport for Son. We disagree.
As an initial matter, we find Husband abandoned this issue and it is not preserved for our review. See Potter v. Spartanburg Sch. Dist. 7 , 395 S.C. 17, 24, 716 S.E.2d 123, 127 (Ct. App. 2011) ("An issue is deemed abandoned if the argument in the brief is not *802 supported by authority or is only conclusory."). Nevertheless, we address this issue because "procedural rules are subservient to the court's duty to zealously guard the rights of minors." Joiner ex rel. Rivas v. Rivas , 342 S.C. 102, 107, 536 S.E.2d 372, 374 (2000).
Upon our de novo review of the record, we find evidence supports the family court's finding that, if Husband obtained a passport for Son and traveled to Bulgaria, Husband may not return with Son. The family court found Husband appeared to have hidden assets in Bulgaria and found witnesses' assertions credible that Husband previously stated his intentions to leave Son in Bulgaria and seek Bulgarian citizenship for Son. We also agree with the family court's finding that the harm to Son would be great if he remained in Bulgaria under Husband's control. The Son thrives on stability and long trips without Wife will negatively impact Son. See Dobson v. Atkinson , 232 S.C. 12, 17, 100 S.E.2d 531, 533 (1957) (allowing the custodial parent to take the minor child to a foreign country only after finding that the child would have adequate care and would not be subjected to any undue danger if taken **181 by the custodial parent and her new spouse to a foreign country for a two-year period). Thus, we find the preponderance of the evidence supports granting Wife discretion in obtaining a passport for Son and affirm the family court.
D. Bulgarian Bank Account
Husband argues the family court erred by including his Bulgarian Fibank account in the marital estate and crediting it against him. We disagree.
"The family court does not have authority to apportion nonmarital property." Gilley v. Gilley , 327 S.C. 8, 11, 488 S.E.2d 310, 312 (1997). "The burden to show property is not subject to equitable distribution is upon the one claiming that property acquired during the marriage is not marital." Brown v. Brown , 379 S.C. 271, 283, 665 S.E.2d 174, 181 (Ct. App. 2008) (per curiam).
Husband argues the Fibank account, opened during the parties' marriage, constitutes a $32,120 nonmarital gift from his parents to hold in trust, and the family court should not have included the account in the marital estate. However, prior to trial, Husband failed to disclose information regarding the account and in response to Wife's motion to compel, Husband falsely claimed that he would have to go to Bulgaria to obtain the account records. Only after receiving a court order did Husband produce a three-sentence, translated document stating Husband's father withdrew $32,120 from his bank and deposited it into Husband's Fibank account for Husband to hold in trust. The evidence does not support Husband's claim that he held the Fibank funds in trust for his parents. In its factual findings, the family court noted that Husband's parents' names were not on the account; Husband was unable to produce a bank statement indicating the funds originated from his father; Husband repeatedly made withdrawals and deposits into the Fibank account while in Bulgaria; and Husband testified funds from his Bank of America account were deposited into the Fibank account.
The family court found Husband repeatedly failed to provide reliable financial documentation or testimony regarding his finances. See Lewis , 392 S.C. at 385, 709 S.E.2d at 651-52 (holding de novo review does not require the appellate court to **182 ignore the fact the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony). Upon our de novo review, we find Husband failed to carry his burden in showing the preponderance of the evidence is against the family court's findings. See id. at 392, 709 S.E.2d at 655 (stating the appellant bears the burden of convincing the appellate court that the preponderance of the evidence is against the family court's findings). Accordingly, we affirm the family court's inclusion of Husband's Bulgarian Fibank account in the marital estate.
E. Marital Residence
Husband claims the family court erred in awarding him only 40% of the marital residence because (1) Wife's nonmarital funds used for purchasing the marital residence *803 transmuted into marital property; (2) both parties contributed equally to the mortgage during the years of living together in the marital residence; and (3) the court failed to consider Wife's nonmarital property. Conversely, Wife, in her cross-appeal, argues her greater contribution to the down payment on the marital residence, coupled with her greater homemaking contributions and her equal contribution to the mortgage while the parties lived together entitled her to more than 60% of the marital residence. We agree with Wife's argument.
With certain exceptions, marital property is "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation ... regardless of how legal title is held." S.C. Code Ann. § 20-3-630(A) (2014). "Equitable distribution of marital property 'is based on the recognition that marriage is, among other things, an economic partnership.' " Crossland v. Crossland , 408 S.C. 443, 456, 759 S.E.2d 419, 426 (2014) (quoting Morris v. Morris , 335 S.C. 525, 531, 517 S.E.2d 720, 723 (Ct. App. 1999) ). Moreover, "[u]pon dissolution of the marriage, marital property should be divided and distributed in a manner [that] fairly reflects each spouse's contribution to its acquisition, regardless of who holds legal title." Id. (quoting Morris , 335 S.C. at 531, 517 S.E.2d at 723 ).
**183 In making an equitable apportionment of marital property, the family court must give weight in such proportion as it finds appropriate to the following factors: (1) the duration of the marriage; (2) marital fault; (3) the value of the marital property and the contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value, including contributions as homemaker; (4) the income and earning potential of the parties and the opportunity for future acquisition of capital assets; (5) the parties' physical and emotional health; (6) additional training or education needed; (7) the parties' nonmarital property; (8) the existence or nonexistence of vested retirement benefits; (9) the award of alimony; (10) the desirability of awarding the family home; (11) tax consequences; (12) prior support obligations; (13) liens and any other encumbrances upon the marital property; (14) child custody arrangements and obligations; and (15) any other factors the court considers relevant. S.C. Code Ann. § 20-3-620(B) (2014).
These criteria are intended to guide the family court in exercising its discretion over apportionment of marital property. Johnson v. Johnson , 296 S.C. 289, 297, 372 S.E.2d 107, 112 (Ct. App. 1988). "The ultimate goal of [equitable] apportionment is to divide the marital estate, as a whole, in a manner that fairly reflects each spouse's contribution to the economic partnership and also the effect on each of the parties of ending that partnership." King v. King , 384 S.C. 134, 143, 681 S.E.2d 609, 614 (Ct. App. 2009).
The record reflects that Wife, using premarital funds that transmuted into marital property, contributed $100,000 of the $115,000 down payment for the acquisition of the marital residence. See Dawkins v. Dawkins , 386 S.C. 169, 173, 687 S.E.2d 52, 54 (2010) (per curiam) ("[A] transmutation of inherited nonmarital property into marital property [does] not extinguish the inheritor's right for special consideration upon divorce."), abrogated on other grounds by Lewis , 392 S.C. at 385-86, 709 S.E.2d at 651-52 ; id. at 173-74, 687 S.E.2d at 54 ("[T]he correct way to treat [an] inheritance is as a contribution by [the inheriting party] to the acquisition of marital property [and that] [t]his contribution should be taken into account in determining the percentage of the marital estate to which [the inheriting party] is equitably entitled upon distribution."
**184 (alterations in original) (quoting Toler v. Toler , 292 S.C. 374, 380 n.1, 356 S.E.2d 429, 432 n.1 (Ct. App. 1987) ) ); id. (overruling Cooksey v. Cooksey , 280 S.C. 347, 312 S.E.2d 581 (Ct. App. 1984), to the extent it may be read to allow a family court to separate and subtract the inheritance amount from the marital estate and then award this "special equity" to the inheritor in addition to his or her portion of the court-ordered division of the marital estate). Post filing, Wife assumed sole responsibility for the mortgage payments and reduced the mortgage balance from *804 $97,060.15 at the time of filing to $84,002.94 at the time of trial.
Additionally, the record reveals that the parties were married for fifteen years; lived in the marital residence for seven years; and Husband engaged in marital misconduct, which caused the breakup of the marriage. Wife was the primary homemaker and the primary caregiver of Son. Both parties made similar income contributions during the marriage. The family court found that Wife's nonmarital accounts decreased throughout the marriage and continued to decrease post-filing, and Husband failed to provide reliable financial documentation or testimony regarding his finances. After de novo review, we find the family court's 60/40 split of the marital residence, in favor of Wife, resulted in an unfairly low apportionment to Wife in light of the aforementioned circumstances. See Doe v. Doe , 370 S.C. 206, 214, 634 S.E.2d 51, 55 (Ct. App. 2006) ("Even if the family court commits error in distributing marital property, that error will be deemed harmless if the overall distribution is fair ." (emphasis added) ); see also S.C. Code Ann. § 20-3-620(B) (2014) (listing factors the family court must consider when making an equitable apportionment of marital property); Fredrickson v. Schulze , 416 S.C. 141, 149, 785 S.E.2d 392, 397 (Ct. App. 2016) (finding the wife's substantial down payment on the marital residence with premarital funds should be taken into account in determining the equitable distribution of the martial estate and affirming the $60,000 consideration given to the wife).
Based on our view of the preponderance of the evidence, the more equitable division of the marital residence would be 70% to Wife and 30% to Husband. See Lewis , 392 S.C. at 384-85, 709 S.E.2d at 651-52 (holding that, in appeals from the family court, the appellate court reviews factual issues de novo and **185 may find facts in accordance with its own view of the preponderance of the evidence); Fredrickson , 416 S.C. at 157, 785 S.E.2d at 401 (affirming the family court's 70/30 equitable distribution of the marital estate in favor of the wife when the parties' marriage lasted seven years, the wife contributed 84% of the parties' income, the wife was the primary homemaker and caregiver to the parties' son, the wife brought significant nonmarital property into the marriage, and the wife's wealth decreased during the marriage); Brandi v. Brandi , 302 S.C. 353, 357-58, 396 S.E.2d 124, 126-27 (Ct. App. 1990) (per curiam) (affirming a 70/30 division in equitable distribution).
F. Attorney's Fees
Last, Husband asserts the family court erred by giving too much weight to Husband's conduct during trial in awarding Wife attorney's fees. We disagree.
In determining whether to award attorney's fees, the family court should consider the following factors: "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) effect of the attorney's fee on each party's standard of living." E.D.M. v. T.A.M. , 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992). To determine the amount of an award of attorneys' fees, the court should consider: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services." Glasscock v. Glasscock , 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991). When a party's uncooperative conduct in discovery and litigation increases the amount of the other party's fees and costs, the court can use this as an additional basis to award the other party attorney's fees. Spreeuw v. Barker , 385 S.C. 45, 72-73, 682 S.E.2d 843, 857 (Ct. App. 2009).
In the instant case, the family court ordered Husband to pay $30,000 of the $46,407.01 that Wife requested for attorney's fees and costs at the time of trial.[6] First, upon de **186 novo review we find the family court considered the appropriate factors in awarding Wife attorney's fees, including that Wife *805 prevailed on the issues of primary custody of Son and equitable distribution. See E.D.M. , 307 S.C. at 476, 415 S.E.2d at 816 (noting the family court should consider, among other things, the beneficial results obtained by the attorney). Additionally, during its discussion of attorney's fees in the final order, the family court specifically found Husband was uncooperative during discovery, in settlement negotiations, and at trial. See Bodkin v. Bodkin , 388 S.C. 203, 223, 694 S.E.2d 230, 241 (Ct. App. 2010) ("This court has previously held when parties fail to cooperate and their behavior prolongs proceedings, this is a basis for holding them responsible for attorney's fees."); Spreeuw , 385 S.C. at 72-73, 682 S.E.2d at 857 (affirming the family court's award of attorney's fees and costs based on the appropriate factors and taking into account the father's uncooperative conduct in discovery and his evasiveness in answering questions with respect to his finances). Thus, we affirm the family court's award of $30,000 to Wife for attorney's fees at the time of trial.[7] **187 II. Wife's Cross-Appeal
On cross-appeal, Wife asserts the family court erred in (1) apportioning Wife insufficient equity in the marital residence;[8] (2) not including Husband's unaccounted-for funds in the marital estate; (3) making Wife pay Husband his equitable distribution in post-tax, non-retirement assets; and (4) not awarding Wife attorney's fees incurred in defending Husband's motion to reconsider. We address each remaining argument in turn.
A. Unaccounted-for Funds
Wife contends the family court erred in its equitable distribution award by not crediting Husband with funds for which he could not account. We disagree.
For the family court to properly include property within the marital estate, two factors must coincide. Shorb v. Shorb , 372 S.C. 623, 632, 643 S.E.2d 124, 129 (Ct. App. 2007) ; see also S.C. Code Ann. § 20-3-630(A) (2014). "First, the property must be acquired during the marriage" and "[s]econd, the property must be owned on the date of filing or commencement of marital litigation." Shorb , 372 S.C. at 632, 643 S.E.2d at 129. The ownership prong may present problematic issues if the family court overlooks assets that should have been included in the marital estate, but were non-existent on the date of filing due to a party's misconduct. Id. "Consequently, if a party attempts to unfairly extinguish ownership of marital property before the date of filing or to improperly delay ownership of marital property until after litigation is commenced, the family court must include that property in the marital estate." Id. Concluding otherwise would "promote fraud, reward misconduct, and contravene legislative intent." Id. (quoting *806 Bowman v. Bowman , 357 S.C. 146, 155, 591 S.E.2d 654, 659 (Ct. App. 2004) ). However, such property will be included in the marital estate only if the party seeking to classify the property as marital property introduces clear and convincing evidence of fraud in relation to the **188 disposal of the property. See id. at 633, 643 S.E.2d at 129 ("Proceeds from [the h]usband's stock options will be considered marital only if the [w]ife introduces clear and convincing evidence to establish fraud in relation to [the h]usband's sale of the options."); see also Devlinv. Devlin , 89 S.C. 268, 272, 71 S.E. 966, 968 (1911) ("[F]raud will not be presumed, but [one] who alleges it must prove it."); Armstrong v. Collins , 366 S.C. 204, 219, 621 S.E.2d 368, 375 (Ct. App. 2005) ("Fraud must be shown by clear and convincing evidence.").
Specifically, Wife argues the family court should have credited Husband with: (1) $20,000 Husband transferred to his father's account in Bulgaria on January 3, 2007; (2) $5,000 Husband transferred to his father's account in Bulgaria on July 3, 2008; (3) $5,000 Husband transferred to his mother's account in Bulgaria on April 15, 2013; (4) $29,821.37 Husband liquidated from his Bank of America certificate of deposit (CD) shortly before July 29, 2008; and (5) $10,500 Husband withdrew from his Bank of America account on October 10, 2010.
As an initial matter, we find the family court did credit Husband with (1) the $20,000 Husband transferred to his father's account in Bulgaria on January 3, 2007; (2) the $5,000 Husband transferred to his father's account in Bulgaria on July 3, 2008; and (3) the $5,000 Husband transferred to his mother's account in Bulgaria on April 15, 2013. After finding Husband's testimony not credible regarding the source of the Fibank funds, the family court equated the $30,000 in the Fibank account as funds from the three aforementioned transfers and ordered the Fibank account to be divided equally between the parties. Thus, we find the family court accounted for the three Bulgarian account transfers and affirm the family court's inclusion of these funds in the marital estate.
With respect to the $29,821.37 Husband liquidated from his Bank of America CD and the $10,500 Husband withdrew from Bank of America on October 10, 2010, we find no error in the family court's exclusion of these funds from the marital estate. We find Husband's disposal of these funds before the date of filing negated the ownership prong necessary to classify the funds as marital property. See Shorb , 372 S.C. at 633, 643 S.E.2d at 130 (finding the sale of stock **189 options, which were acquired during the marriage but were sold before the date of filing, negated the ownership prong, which was necessary to classify the proceeds from the sale of the options as marital). Thus, the $29,821.37 and the $10,500 would be considered marital property only if Wife introduced clear and convincing evidence of fraud, in relation to Husband's disposal of the funds. See id. at 633, 643 S.E.2d at 129 ("Proceeds from [the h]usband's stock options will be considered marital only if the [w]ife introduces clear and convincing evidence to establish fraud in relation to [the h]usband's sale of the options.").
In support of her assertion that Husband fraudulently disposed of the funds, Wife provided Husband's bank statements which evidenced Husband withdrew the funds and liquidated the CD. However, despite the family court's finding that Husband's financial testimony was not credible,[9] Wife failed to provide clear and convincing evidence that established how the funds were used-whether for marital or nonmarital purposes-after the funds were withdrawn and liquidated. Without further evidence to contravene Husband's assertion that he may have utilized the funds for marital purchases, we find Wife failed to provide clear and convincing evidence of Husband's fraud. See id. (asserting that, because the wife presented no additional corroborating evidence beyond her assertion *807 of fraud contained in her affidavit, the court "cannot presume [the h]usband acted in a fraudulent manner" when the husband asserted the wife received money from the sale proceeds and the husband paid the wife's debts with the proceeds). Accordingly, because the ownership prong is negated by Husband's disposal of the $29,821.37 and the $10,500 before the date of filing and because no clear evidence exists that Husband committed fraud when he disposed of the funds, we affirm the family court's exclusion of the $29,821.37 and the $10,500 from the marital estate. **190 B. Tax Consequences
Wife argues the family court erred in apportioning Wife predominantly illiquid and pre-tax retirement assets in the equitable distribution without considering the tax consequences of a forced liquidation. We disagree.
The family court is required to consider the tax consequences to each party resulting from equitable apportionment. See S.C. Code Ann. § 20-3-620(B)(11) (2014). However, if the apportionment order does not contemplate the liquidation or sale of an asset, then the family court should not consider the tax consequences from a speculative sale or liquidation. Wooten v. Wooten , 364 S.C. 532, 543, 615 S.E.2d 98, 103 (2005) ; see also Bowers v. Bowers , 349 S.C. 85, 97-98, 561 S.E.2d 610, 617 (Ct. App. 2002) (finding no error when the family court did not expressly consider the tax consequences resulting from its award to the wife of one-half the value of the husband's 401(k) account because the court's order did not require or contemplate liquidation of the account).
The family court awarded Wife two major assets in the equitable distribution-the marital residence and Wife's Jones Ford 401(k). Wife argues that, because she will remain in the marital residence to accommodate Son's need for stability, she will be forced to liquidate her pre-tax retirement Jones Ford 401(k), which will result in tax consequences and penalties, in order to pay Husband's equitable distribution award. However, the order does not contemplate the sale of the marital residence or the liquidation of Wife's 401(k). We find no error and affirm the family court on this issue.
C. Attorney's Fees
Last, Wife argues the family court erred in not awarding her attorney's fees and costs for successfully defending Husband's motion to reconsider. Specifically, Wife argues she achieved successful results in defending Husband's motion that raised fifty-four issues in a cursory manner. We agree.
In light of our decision to reverse the family court's apportionment of the marital residence, we find it appropriate to reconsider the family court's denial of Wife's request for attorney's fees and costs for defending Husband's motion to **191 reconsider. See Woods v. Woods , 418 S.C. 100, 124, 790 S.E.2d 906, 918 (Ct. App. 2016) ("Whe[n] beneficial results are reversed on appeal, the attorney's fee award, or lack thereof, must also be reconsidered."). The appellate court may reverse an attorney's fees award when the beneficial results achieved by trial counsel are reversed on appeal. Myers v. Myers , 391 S.C. 308, 321, 705 S.E.2d 86, 93 (Ct. App. 2011).
The family court awarded Wife $42,664.80 of the $59,071.81 in attorney's fees and costs that Wife incurred at the time of trial. The family court denied Wife's fee request for an additional $1,350 in attorney's fees and costs for defending Husband's motion to reconsider.[10] Accordingly, Wife is responsible for $17,757.01 of her own attorney's fees and costs. In considering each party's ability to pay their own attorney's fees, we note the family court awarded $41,164 in liquid assets to Husband and only $6,552 in liquid assets to Wife in the equitable distribution. Moreover, throughout the parties' marriage and subsequent filing, Wife's income from her nonmarital Brown Advisory accounts decreased and will continue to decrease-creating a greater discrepancy between the parties'
*808 income-if Wife depletes her nonmarital Brown Advisory accounts to pay her attorney's fees and costs.
Consequently, given the allocation of liquid assets, the parties' respective financial conditions, each party's ability to pay their own attorney's fees, and our favorable disposition of Wife's equity in the marital residence on appeal, we reverse the family court's denial and award Wife the $1,350 in attorney's fees sought for defending Husband's motion to reconsider. See E.D.M. , 307 S.C. at 476-77, 415 S.E.2d at 816 (stating that when determining whether to award attorney's fees and costs the family court must consider: "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) effect of the attorney's fee on each party's standard of living"); see also Buist v. Buist , 410 S.C. 569, 579, 766 S.E.2d 381, 386 (2014) (Pleicones, C.J., concurring) (recognizing "the threshold question of entitlement [to fees] always turns, at least in part, on the beneficial results obtained").
**192 CONCLUSION
Based on the foregoing analysis, the family court's order is
AFFIRMED IN PART and REVERSED IN PART.
THOMAS and MCDONALD, JJ., concur.

Throughout his voluntary departure, Husband contributed no financial support to Wife.

Husband's parents resided in Bulgaria.

Husband stipulated that his adultery was grounds for Wife to obtain a divorce.

Husband testified he occasionally worked odd jobs, such as doing repair work at friends' homes.

The appellate court review's evidentiary and procedural rulings of the family court for an abuse of discretion. Stoney , 422 S.C. at 594 n.2, 813 S.E.2d at 486 n.2

Wife incurred $59,071.81 in fees and costs, $12,664.80 of which the family court awarded to Wife prior to trial.

We note that Husband lists additional grounds in his brief for overruling the family court, including: (1) for purposes of calculating alimony and child support, the record does not support imputing $200 per month in additional income to Husband; (2) in determining alimony, the family court improperly considered the impact of Son's special needs on Wife's ability to work under subsection 20-3-130(C)(9) of the South Carolina Code (2014); and (3) Wife is not entitled to attorney's fees because the family court did not consider (i) the income-to-attorney's fee ratio, (ii) Wife's ability to pay her own fees, and (iii) the parties' respective incomes and the effect a fee award would have on their respective standards of living.
We decline to address the three aforementioned issues as these issues are not preserved for our review. We find that, by failing to substantiate issues one and two with supporting case law, Husband abandoned both issues on appeal. See Lewis v. Lewis , 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011) (holding the appellant bears the burden of convincing the appellate court that the preponderance of the evidence is against the family court's findings); Tirado v. Tirado , 339 S.C. 649, 655, 530 S.E.2d 128, 131 (Ct. App. 2000) (deeming an issue abandoned if the argument in the brief is not supported by authority or is only conclusory). Further, we find issue three unpreserved because Husband failed to raise the issue in his Rule 59(e) motion. See Sweeney v. Sweeney , 420 S.C. 69, 82, 800 S.E.2d 148, 154 (Ct. App. 2017) (finding because the husband did not raise an argument in his Rule 59(e) motion-thereby not allowing the family court the opportunity to rule upon the issue or correct any alleged mistakes in its final order-the issue was not preserved on appeal).

Wife's marital estate apportionment issue is discussed supra , Part I.E.

The family court found Husband's testimony was not credible regarding the source of his funds, the location of various funds after they were withdrawn from his bank accounts or liquidated from the CD, and his purpose for transferring funds to the Bulgarian bank accounts. The court also did not find credible Husband's testimony that he transferred part of the funds to his parents as repayment for a $30,000 debt when Husband produced no evidence of an actual debt obligation.

Wife filed an affidavit seeking compensation for 4.5 hours of work billed at $300 per hour for defending Husband's motion to reconsider.