18247

Billy D. YOUNG, Respondent, v. GOODYEAR SERVICE STORES,
a Division of The Goodyear Tire and Rubber Company, Appellant
(137 S. E. (2d) 578)

*Messrs. Holcombe & Bomar,* of Spartanburg, *for Appellant,*

*C. E. Saint-Amand, Esq.,* of Gaffney, *for Respondent,*

*Messrs. Holcombe & Bomar,* of Spartanburg, *for Appellant, in Reply,*

August 4, 1964.

Bussey, Justice.

In this action for fraud and deceit, plaintiff-respondent recovered a jury verdict against the defendant-appellant for actual damages in the amount of two hundred dollars, and punitive damages in the amount of twenty-five hundred dollars.

The verdict for actual damages is not here challenged. As to punitive damages, defendant moved for a directed verdict; for a judgment *non obstante veredicto,* and, in the alternative, for a new trial on the grounds that (a) the verdict for punitive damages was so excessive as to show caprice or prejudice rendering the verdict void, and (b) the verdict for punitive damages, if not void, was excessive,

contrary to the weight of the evidence and contrary to the law and the instructions of the court, all of which motions were overruled by the trial judge.

The principal, although not the only issue, before us on appeal is stated by the appellant as follows:

"Did not the trial judge err in holding that there was evidence in the case from which the jury could permissively infer willfulness as a prerequisite to an award for punitive damages?"

In considering this question it should not be necessary to cite authority for the well established proposition that in the consideration of motions for either a directed verdict or a judgment *non obstante veredicto,* the evidence and all inferences reasonably deducible therefrom must be veiwed in the light most favorable to the plaintiff We, therefore, proceed to review the evidence in this case in that light.

During the month of November 1959, the plaintiff purchased from the defendant at its store in Gaffney, South Carolina, one General Electric automatic washing machine, paying therefor the price of a new machine in the amount of $299. The defendant expressly represented to the plaintiff that the washing machine was a new one. The machine was delivered to plaintiff, and a day or two later plaintiff returned to the store and complained that the machine had lint in it and smelled of' soap, giving rise to the belief that it was probably a used machine. He was again assured by the defendant that it was, in fact, a new machine and that the matters complained of by the plaintiff resulted from testing the machine at the factory. Thereafter, plaintiff used the machine for some two years without having any major mechanical trouble therewith. He did have some minor trouble which he was able to correct himself without calling a repairman, and his wife testified that it had not given satisfactory service because it had never washed clothes "too good." About December 1961, when the machine had

been in use by plaintiff and his wife for approximately two years, the bottom thereof gave way and plaintiff took it apart and discovered the name of one Brown written on the side of the transmission.

He apparently did not report this discovery to the defendant until June 15, 1962. Upon then going to the store of the defendant, the manager who was in charge when he purchased the machine had been transferred to Columbia, and a new manager informed plaintiff that he would take the matter up with the former manager and the General Electric people and let plaintiff hear from him in two or three weeks, "not over three weeks." What, if anything, was done by the defendant in the meantime does not appear, but on August 3, 1962, plaintiff, having heard nothing from his complaints, filed suit.

Among other things, defendant's manager told plaintiff at the time the machine was purchased that the particular machine was a 1959 model, a new one, and that the 1960 models were coming in and for that reason plaintiff was being given a discount, the regular selling price of the machine being about $360.

The evidence further reflects that the particular machine, at least inferentially, was a 1958 model, rather than a 1959 model, and that on July 30, 1958, it had been sold by defendant to one Walter Brown. Defendant received complaints from Mr. Brown about the machine, and at some undisclosed date, defendant brought the machine back to the store and delivered Mr. Brown another machine. Precisely what happened to or with the machine between the time it was picked up from Mr. Brown as an unsatisfafctory one, and the time it was sold to plaintiff, other than that it was reconditioned, simply does not appear in the record. It is inferential that a year or more elapsed before it was sold to the plaintiff, being then represented as a new 1959 model, rather than a 1958 used machine. The defendant disputes none of the foregoing facts.

The defendant contends, however, that it only made an honest error; that there was no willful or intentional misconduct on its part, and that it should not be held to respond in punitive damages, as opposed to actual damages, for which it concedes it is liable. As far as the record goes, the defendant however, offered absolutely no explanation as to how the contended innocent error occurred. The record does not show, among other things, any similarity that might or might not exist between 1958 and 1959 models. The regular procedure in the store was for used merchandise to be tagged and classified as such, and it had a display room for new models and a used room for used merchandise. It was brought out that the manager was required to keep and did keep a detailed inventory of virtually every screw and bolt in the place of business, including a record of the model numbers of all washing machines in stock, and further that the particular machine was one of defendant's expensive ones.

Something of the mental attitude of the manager of the defendant who sold the machine may be gleaned from his testimony upon the stand. Although the defendant had already admitted in its answer that it had sold plaintiff a used washing machine representing it to be a new one, the manager was asked the following:

"You are satisfied now that it was a used machine?"

"A. No."

His mental attitude about the matter is further shown by the fact that when complaint was made to him a day or two after delivery he again assured plaintiff that it was a new machine, without taking the trouble to check the model number against his inventory, even if he did not have actual knowledge of the falsity of the representations made at the time of the sale. Again, in June 1962, the attitude of the defendant is shown when plaintiff was promised that he would hear something in two and not more than three weeks about his complaint, following which apparently nothing was done.

Of course, on the issue of willfulness, the mental attitude of the manager at the time of the original false representations and sale is what is controlling, but as was said by this court in *Hallman v. Cushman,* 196 S. C. 402, 13 S. E. (2d) 498,

"It is indeed manifest that subsequent conduct may tend to throw light upon the immediate occurrence under investigation, especially where mental attitudes are important, such as a conscious failure to observe due care, and the like."

Defendant-appellant concedes that liability for actual damages arises in an action for fraud and deceit when a false representation is recklessly made, as a positive assertion, without knowing or caring whether it is true or false, but argues that for liability for punitive damages to ensue, there must have been actual knowledge that the representation was false at the time the representation was made. No case in point has been cited in support of this argument. In the case of *Banahan v. Metropolitan Life Ins. Co.,* 214 S. C. 403, 52 S. E. (2d) 809, this court, *inter alia,* said:

"Ordinarily, a recovery of exemplary or punitive damages will be allowed where the case presents exceptional circumstances clearly indicating fraudulent conduct, malice or willfulness or such a reckless disregard of the truth as to justify the legal inference of fraudulent intent."

That case is not in point on the facts, nor controlling because there the court concluded that the evidence in the case did not substantiate the charge of fraud and deceit set forth in the complaint.

We think, however, that the language of this court in the case of *Rogers v. Florence Printing Co.,* 223 S. C. 567, 106 S. E. (2d) 258, an action for libel, supports the conclusion that in an action for fraud and deceit the recovery of punitive damages is not limited to cases where the false representations were actually known to be false at the time of making them. There the court said:

"The test by which a tort is to be characterized as reckless, willful or wanton is whether it has been committed in such a manner or under such circumstances that a person of ordinary reason or prudence would then have been conscious of it as an invasion of the plaintiff's rights. *Tolleson v. Southern R. Co.,* 88 S. C. 7, 70 S. E. 311; *Eberle v. Southern R. Co.,* 98 S. C. 89, 79 S. E. 793. It is this present consciousness of wrongdoing that justifies the assessment of punitive damages against the tort-feasor, *State ex rel. Gwynn v. Citizens' Tel .Co.,* 61 S. C. 83, 39 S. E. 257, 55 L. R. A. 139, 85 Am. St. Rep. 870; and it has been variously referred to as 'conscious failure to observe due care', *Darlington County Fair & Driving Ass'n v. Atlantic Coast Line R. Co.,* 90 S. C. 436, 73 S. E. 790; as 'conscious indifference to the rights of others',*Cox v. Coleman,* 189 S. C. 218, 200 S. E. 762, 764; and as 'gross disregard of the rights of the person injured', *Fulton v. Atlantic Coast Line R. Co., supra* 220 S. C. 287, 67 S. E. (2d) 425. But the common denominator of these expressions is the test before mentioned viz. : that at the time of his act or omission to act the tort-feasor be conscious, or chargeable with consciousness, of his wrougdoing."

It has been many times stated that fraud is not presumed, and that one who charges another with fraud and deceit as a basis of a cause of action must establish such by clear, cogent and convincing evidence. Here we think the evidence quite sufficiently shows that the admitted false representations were made in a manner and under such circumstances as to make defendant's manager chargeable with consciousness of his wrongdoing. Moreover, the evidence is clearly susceptible of the inference that, in point of fact, he knew the representations to be false when he made them.

Defendant's contention that the verdict for punitive damages is at variance with the instructions of the trial judge is based on the argument that the evidence failed to prove

willfulness on the part of the defendant, and hence, has already been disposed of.

Other exceptions on behalf of the defendant assert that the trial judge should have granted a new trial in that the verdict for punitive damages was so excessive as to shock the conscience of the court and necessarily be the result of passion, prejudice or caprice, and that the verdict was contrary to the greater weight of the evidence. The granting or refusing of this motion on either of said grounds was clearly within the discretion of the trial judge, and the record is free of anything that would indicate any abuse of discretion on his part.

All exceptions are overruled and the judgment of the lower court is affirmed.

Affirmed.

TAYLOR, C. J. and MOSS, LEWIS and BRAILSFORD, JJ., concur.