643 S.E.2d 124

**Andrea S. SHORB, Appellant,**

v.

**Patrick SHORB, Respondent.**

**No. 4218.**

Court of Appeals of South Carolina.

Submitted Jan. 1, 2007.

Decided March 19, 2007.

624

H. Michael Spivey, of Greenville, for Appellant.

Andrew G. Goodson, of Fountain Inn, for Respondent.

WILLIAMS, J.:

The family court ordered Patrick Shorb (Husband) to transfer certain stock options, which were unmatured and nonvested on the date of filing, to Andrea Shorb (Wife).[1]  It further ordered Husband to pay Wife a portion of the proceeds from options Husband exercised and sold before the date of filing. Husband appeals the family court's decision, claiming Wife was not entitled to the full award because only some of the options were marital property.  We affirm in part and reverse in part.

## FACTS

Husband and Wife married on May 10, 1996.  They had no children during their seven-year marriage.  On the date of divorce, Husband was in a managerial position at Wal–Mart, and Wife worked as a private court reporter.  Wife filed for divorce on October 27, 2003, citing Husband's adultery as the ground for divorce.

The court held a final hearing on November 30, 2004 and approved the parties' settlement agreement on December 15, 2004.  Among other assets, the settlement agreement entitled Wife to fifty-five percent of Husband's Wal–Mart stock options.  The parties agreed the family court would retain jurisdiction to determine what portion of the stock options was marital property.  Both parties submitted briefs and affidavits supporting their positions.

On April 15, 2005, the family court entered a supplemental order relating to the stock options.  It found that all stock options acquired during marriage, but prior to the filing of

---

1.  As a general rule, stock options are vested or nonvested, matured or unmatured, and restricted or unrestricted.  *See Fountain v. Fountain,* 148 N.C.App. 329, 559 S.E.2d 25, 31 (2002) (citing *Equitable Distribution of Stock Options,* 17 Equitable Distribution Journal 85, 86 (Aug. 2000)).  An option is vested if the right to exercise the option cannot be cancelled.  *Id.* at 32 n. 11. An option is matured, for equitable distribution purposes, if the right to exercise the option exists before the date of filing.  *Id.*  Finally, an option is restricted if it cannot be alienated to another party.  *Id.* Because neither party presented any evidence regarding whether the options were restricted, we do not address this aspect of the options in our opinion.

divorce, were compensation for Husband's employment at Wal–Mart and constituted marital property.

The court also correctly noted the stock options' vesting dates did not affect whether they were marital property; rather, the vesting dates affected the value of those options. In valuing the options Husband sold in July 2003, the family court held that pursuant to the agreement Wife was entitled to fifty-five percent of the net value of the stock options on the date of sale. The family court ordered Husband to transfer $24,099.17 to Wife within thirty days of the order.

The family court also determined Wife was entitled to fifty-five percent of all stock options held on the date of the final hearing, even though only a certain percentage of those options had fully vested.[2] The family court ordered Husband to transfer 1,096 of the total 2,001 stock options to Wife within thirty days of the order. This appeal follows.

## STANDARD OF REVIEW

■■■ The apportionment of marital property is within the discretion of the family court and will not be disturbed on appeal absent an abuse of discretion. *Wooten v. Wooten,* 364 S.C. 532, 542, 615 S.E.2d 98, 103 (2005). In appeals from the family court, this Court may find facts in accordance with its own view of the preponderance of the evidence. *Hatfield v. Hatfield,* 327 S.C. 360, 363, 489 S.E.2d 212, 215 (Ct.App.1997). This broad scope of review does not require us to disregard the family court's findings. *Bowers v. Bowers,* 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct.App.2002). Nor are we required to

---

2. Husband maintains that the date of valuation should have been the date of filing rather than the date of the final hearing. In his brief, Husband asserts scant authority for this proposition, merely stating the date of valuation was both "wrong" and "unfair." Regardless, we find the date of valuation for the options at issue to be immaterial. The family court could not currently value the nonvested options on the date of filing or on the date of the final hearing because the fair market value of Wal–Mart's stock would undoubtedly change before the parties exercised these options. Further, the family court was only to "make a decision as to how [many of the stock options are] marital property" as the parties previously "agreed that [Wife] is entitled to 55% of the amount the Court determines to be marital property." Because the family court's only responsibility was to decide which options were marital and then to award Wife her allotted share, the valuation issue has no substantive bearing on the outcome.

disregard the findings below or ignore the better vantage point the family court occupies in determining witness credibility. *Cherry v. Thomasson*, 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981). The burden is upon the appellant to convince this Court that the family court erred in its findings of fact. *Dubose v. Dubose*, 259 S.C. 418, 423, 192 S.E.2d 329, 331 (1972).

## LAW/ANALYSIS

Husband first contends the nonvested stock options are non-marital property, which are not subject to equitable distribution.[3] Further, Husband avers that he exercised certain vested stock options prior to the date of filing, which the family court erroneously included as part of the marital estate. Based on these assertions, Husband argues Wife was entitled only to the portion of currently held options that vested and were in existence on the date of filing. While we reject the first argument, we accept the latter.

### I. Nonvested Stock Options

Pursuant to Section 20–7–473 of the South Carolina Code (Supp.2006), marital property is "all real and personal proper-

---

**3.** Husband lists several additional grounds in his brief for overruling the family court, including: (1) the stock options were never transmuted into marital property; (2) the family court should have reviewed the parties' settlement agreement, even though both parties consented to it, as equity and fairness require a different outcome; and (3) the valuation date for the stock options should have been the date of filing rather than the date of the hearing.

Husband fails to sufficiently support his contentions by either case law or the record. More importantly, Husband concedes from the outset in his brief that "the only issue left for appeal . . . at the time his present attorney took over the case was the stock [o]ption issue." Husband's only argument heading in his brief is "Did the Trial Court Err in Determining That Respondent Should Receive 1,096 Shares of Appellant's Stock Options From Wal–Mart?" Husband's additional arguments must fail as the only issue properly submitted and argued to this Court is the division of the stock options. *See Ellie, Inc. v. Miccichi*, 358 S.C. 78, 99, 594 S.E.2d 485, 496 (Ct.App.2004) (When "an issue is not argued within the body of the brief but is only a short conclusory statement, it is abandoned on appeal."); *see also* Rule 208(b)(1)(D), SCACR (A "brief shall be divided into as many parts as there are issues to be argued. At the head of each part, the particular issue to be addressed shall be set forth in distinctive type, followed by discussion and citations of authority.").

ty which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation. . . . " Section 20–7–473 also includes several exceptions to marital property; however, none of these exceptions explicitly mention vested or nonvested stock options.

We have yet to address in South Carolina whether employee stock options are marital property, subject to equitable distribution. In resolving this issue, we first look to how this State has characterized pension benefits, which are similar to stock options.[4]

Like stock options, the Code does not specifically define pension benefits as marital property, but this Court has consistently held that both vested and nonvested retirement benefits are marital property if the benefits are acquired during the marriage and before the date of filing. *See generally Hickum v. Hickum*, 320 S.C. 97, 99, 463 S.E.2d 321, 322 (Ct.App.1995) (" 'Since retirement plans were not excluded by the [Code], retirement plans are therefore includable as marital property subject to division.' " (quoting *Ferguson v. Ferguson*, 300 S.C. 1, 386 S.E.2d 267 (Ct.App.1989))); *Hardwick v. Hardwick*, 303 S.C. 256, 259–60, 399 S.E.2d 791, 793 (Ct.App. 1990) (finding employer's contribution to vested retirement fund was a form of additional compensation and constituted marital property); *Kneece v. Kneece*, 296 S.C. 28, 33, 370 S.E.2d 288, 291 (Ct.App.1988) (holding husband's civil service retirement fund was part of marital estate); *see also Ball v. Ball*, 312 S.C. 31, 34–35, 430 S.E.2d 533, 534–35 (Ct.App.1993) (holding nonvested, unvalued pension benefits are a form of deferred compensation in which a party holds a vested, legally enforceable right so that the benefits are marital property subject to equitable distribution).

██ Moreover, vested pension benefits are a "joint investment of both parties" and "constitute an earned property right which, if accrued during the marriage, [are] subject to equitable distribution." *Tiffault v. Tiffault*, 303 S.C. 391, 392–

---

4. According to the article, *Equitable Distribution of Stock Options, supra* note 1, at 87, "Most states treat stock options, vested and nonvested, 'in a manner analogous to the treatment' of retirement benefits." (*cited with approval in Fountain*, 559 S.E.2d at 32 n. 12).

93, 401 S.E.2d 157, 158 (1991); *see also Hardwick,* 303 S.C. at 260, 399 S.E.2d at 793 (If an employer "makes a contribution to a retirement fund as an employment benefit or as a form of additional compensation ... the contribution is marital property...."). Even if the vested benefits have yet to mature, they are properly includable in the marital estate. *See Kneece,* 296 S.C. at 33, 370 S.E.2d at 291.

■ We find stock options to be comparable to pension benefits in that they are also employment benefits. Like pension benefits, the determinative factor for equitable distribution purposes is not when the options mature, but when the options are earned. *See MacAleer v. MacAleer,* 725 A.2d 829, 833 (Pa.Super.Ct.2001) ("The determining factor is not when the right to exercise the option matures, but whether the stock option is earned prior to the date of separation."). Employers may grant options for a variety of reasons, which must be considered in deciding when the option is earned. Most jurisdictions determine the nature of stock options by whether the options are compensation for past services or are an incentive for future services. *See, e.g., Hopfer v. Hopfer,* 757 A.2d 673, 677 (Conn.App.Ct.2001) (holding that stock options rendered entirely as incentive for future services are not marital property subject to equitable distribution); *MacAleer,* 725 A.2d at 835 (finding that employer's award of stock options to compensate employee for past services is earned when awarded, and if granted during marriage, it is marital property, even if the right to exercise the options matures after the date of filing); *In re Balanson,* 25 P.3d 28, 32 (Colo.2001) (holding that stock options granted in consideration for future services do not constitute marital property).

■ In considering other jurisdictions' approaches, we believe the approach most consistent with this State's equitable apportionment scheme and with the purpose of stock options is to classify both vested and nonvested stock options as being earned when granted, and if granted during the parties' marriage, the options are marital property. *See Bowman v. Bowman,* 357 S.C. 146, 158, 591 S.E.2d 654, 660 (Ct.App.2004) ("[C]lassification of property as marital or nonmarital must be determined in light of the true nature and purpose of the benefit."). One can argue that stock options serve a hybrid

purpose in that they compensate an employee for past labor but also serve as an incentive to remain with the employer. Despite these competing functions, we believe the overriding purpose is to create a form of deferred compensation, which is exercisable at a determinate date in the future.

In our view, this approach parallels our position on pension benefits and is in accord with several other jurisdictions that have considered this same issue. These jurisdictions treat stock options as marital property regardless of when the right to exercise the options matures as long as the options are granted as compensation for services rendered during the parties' marriage. *See Fountain,* 559 S.E.2d at 32 (stating nonvested stock options are a salary substitute or a deferred compensation benefit, and if received during marriage and before filing, the options are marital property, even if they cannot be exercised until after the parties divorce); *Jensen v. Jensen,* 824 So.2d 315, 319 (Fla.Dist.Ct.App.2002) (holding nonvested stock options gained prior to filing represent assets accumulated during marriage and are subject to equitable distribution); *Fisher v. Fisher,* 564 Pa. 586, 769 A.2d 1165, 1168 (2001) (finding nonvested stock options are a form of deferred compensation, akin to pension benefits, and if earned by the employee prior to filing, they are marital property).

■ Accordingly, we hold the family court correctly classified all of the stock options in issue as marital property. Based on the facts, the family court determined the options were compensation for Husband's employment. This finding is supported by a memo from Wal–Mart executives, which states that these stock options are an "important part of [an employee's] compensation package" and serve to encourage employees to create "improved Company results and enhanced Shareholder value." As a part of Husband's compensation, Wife was entitled to a share of the stock options that Wal–Mart granted to Husband during the parties' marriage.

■ We recognize contingencies exist, such as Husband's continued employment, for both parties to receive their share of stock options. This disposition does not force Husband to cash in all the stock options and preemptively pay Wife before the options vest. In clarifying the family court's order, we

note that Husband is only responsible for delivering the stock options to Wife that have vested by the date of this opinion.

To date, only seventy-two options have not fully vested. Wife's share of these stock options should be transferred to Wife by appropriate order. It is then Wife's responsibility to exercise her options before the options' expiration date. If some occurrence prevents Husband from exercising his options, it will likewise affect Wife in the same manner. *See Ball,* 312 S.C. at 35, 430 S.E.2d at 535 (holding that if the husband's benefits never vest, the wife is not entitled to receive any of his pension benefits as neither party would suffer disproportionately in relation to the entire marital estate).

## II. Vested and Sold Stock Options

Husband next contends the stock options sold in July 2003 were not in existence on the date of filing; therefore, the proceeds from that sale should not have been distributed as part of the marital estate. We agree.

■ For the family court to properly include property within the marital estate, two factors must coincide. *Bowman,* 357 S.C. at 155, 591 S.E.2d at 658; *see also* § 20–7–473. First, the property must be acquired during the marriage. *Id.* Second, the property must be owned on the date of filing or commencement of marital litigation. *Id.*

■ The ownership prong can potentially raise troublesome issues if the family court overlooks assets which should rightly be included in the marital estate, but which are nonexistent on the date of filing due to a party's misconduct. *See, e.g., Bowman,* 357 S.C. at 155, 591 S.E.2d at 659; *Panhorst v. Panhorst,* 301 S.C. 100, 105, 390 S.E.2d 376, 379 (Ct.App.1990). Consequently, if a party attempts to unfairly extinguish ownership of marital property before the date of filing or to improperly delay ownership of marital property until after litigation is commenced, the family court must include that property in the marital estate. To do otherwise would "promote fraud, reward misconduct, and contravene legislative intent." *Bowman,* 357 S.C. at 155, 591 S.E.2d at 659.

The family court's order confirms that while Husband acquired the stock options during the parties' marriage, he did not own the options on the date of filing. Furthermore, while the parties disagree over whether the funds were spent for marital or non-marital purposes, they both agree that the proceeds from the sale of the stock options were disposed of before filing.

■■■ Proceeds from Husband's stock options will be considered marital only if the Wife introduces clear and convincing evidence to establish fraud in relation to Husband's sale of the options. *See Devlin v. Devlin*, 89 S.C. 268, 272, 71 S.E. 966, 968 (1911) ("[F]raud will not be presumed, but [one] who alleges it must prove it."); *see also Armstrong v. Collins*, 366 S.C. 204, 219, 621 S.E.2d 368, 375 (Ct.App.2005) ("Fraud must be shown by clear and convincing evidence.").

Wife's only assertion of fraud is contained in her affidavit when Wife states: "When [Husband] sold his stock options on July 21, 2003, he did so without my knowledge or consent and [this] was done with the sole intent of depriving me of my rightful marital share." Husband, on the other hand, claims that Wife directly received money from the stock options' sale and that Husband paid other debts incurred by Wife with the proceeds from that sale. Both parties' arguments are tantamount to a swearing match. Because Wife presented no additional corroborating evidence, we cannot presume Husband acted in a fraudulent manner. *See Young v. Goodyear Serv. Stores*, 244 S.C. 493, 500, 137 S.E.2d 578, 582 (1964) ("It has been many times stated that fraud is not presumed, and that one who charges another with fraud and deceit as a basis of a cause of action must establish such by clear, cogent and convincing evidence.").

■■■ Husband's sale of the July 2003 stock options before the date of filing negates the ownership prong, which is necessary to classify the proceeds from the sale of the options as marital. Further, no clear proof exists that Husband committed fraud when he disposed of the options. As such, we reverse the portion of the family court's order that required Husband to pay Wife $24,099.17.

## CONCLUSION

Based on the foregoing, we hold the family court correctly determined the nonvested stock options, granted during the parties' marriage and before the date of filing, were marital property. Wife was properly entitled to fifty-five percent of these marital stock options. Further, the family court erred in granting Wife fifty-five percent of the proceeds from the stock options sold prior to the date of filing. The family court's decision is accordingly

**AFFIRMED IN PART and REVERSED IN PART.**[5]

HEARN, C.J., and KITTREDGE, J., concur.

---

5. We decide this case without oral argument pursuant to Rule 215, SCACR.