# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Laurie Rogers, Appellant,

v.

George Rogers and the Navy Federal Credit Union,

Of Whom George Rogers is Respondent.

Appellate Case No. 2017-002091

---

Appeal From Horry County
Jan Bromell Holmes, Family Court Judge

---

Opinion No. 5778
Heard July 21, 2020 – Filed October 21, 2020

---

## AFFIRMED IN PART AS MODIFIED, REVERSED IN PART, AND REMANDED

---

Nicole Nicolette Mace, The Law Offices of Curt
Sanchez, P.A., of West Palm Beach, Florida, for
Appellant.

Anita Floyd Lee, of Conway, for Respondent.

---

**KONDUROS, J.:** After a nineteen-year union, Laurie Rogers (Wife) filed for divorce from George Rogers (Husband). The family court granted the divorce on the grounds of one year's continuous separation, divided the marital estate 50/50, and awarded custody of the parties' four children to Wife. Wife appeals various aspects of the equitable apportionment and the imposition of discovery sanctions against her. She contends the family court lacked jurisdiction because she was

incompetent and the family court failed to appoint her a guardian ad litem (GAL). We affirm in part as modified, reverse in part, and remand.

## FACTS/PROCEDURAL BACKGROUND

Husband and Wife separated on November 29, 2015, and Wife retained custody of their children. On February 11, 2016, Wife filed an action for divorce on the ground of adultery, wherein she also requested alimony, custody, and child support. Husband filed an answer and counterclaim, agreeing the parties should divorce but denying adultery.

A temporary hearing was initially scheduled for March 8, 2016, but was continued until April 24, 2016. However, on March 11, 2016, the parties entered into a consent order for discovery and on March 14, 2016, Ryan Stampfle was appointed as GAL for the benefit of the parties' children. Wife's attorney was relieved as counsel, and at the request of Wife's second lawyer, the hearing was rescheduled for June 9, 2016. At that time, the family court issued an order which provided, *inter alia,* that Husband would be responsible for child support in the amount of $1,286 per month and Wife would have possession of the parties' home and would be responsible for the monthly mortgage obligation incidental thereto. Additionally, the court ordered that Wife present herself for a psychological evaluation and that the children immediately begin counseling with their father to address alienation concerns. The court also ordered a review hearing within sixty days. The GAL was charged with the responsibility of scheduling Wife's psychological evaluation as well as the counseling. Subsequent to this hearing, Wife dismissed her second attorney.

On June 21, 2016, Husband filed a motion to compel discovery responses. At the review hearing on August 26, 2016, Wife had still not appeared for the psychological evaluation, and the children had yet to begin counseling. Husband also scheduled his motion to compel discovery simultaneous with the review hearing. At this August 26, 2016 hearing, the parties agreed the former marital residence would be immediately placed on the market for sale; the children would immediately begin counseling with Hal Heidt; Wife would immediately present herself for a psychological evaluation with Douglas Ritz; and Wife would respond to discovery within ten days.

Because of the lack of progress between the hearings on June 9 and August 26, the family court ordered another hearing to be scheduled in October 2016. Unfortunately, that hearing was continued until December 8, 2016, due to

inclement weather.  Prior to the commencement of the December 8, 2016 hearing, Wife's counsel presented a doctor's excuse on behalf of Wife.  She advised the court Wife was unable to attend the hearing and sought a continuance.  Husband's counsel then informed the court she had also scheduled a motion to compel for the second time, as well as a rule to show cause for this date, though Wife had evaded service of process of the rule (the hearing date for the motion was served directly on Wife's counsel).  The family court denied Wife's request for a continuance, concluding instead that Wife did not need to be present for the review hearing.  The court then requested a progress report, after which the family court noted Wife had not completed her psychological evaluation, had thwarted counseling efforts, had withdrawn large amounts of cash from the parties' bank account, and had transferred a large sum of money to a new location.

The court also determined Wife had severely damaged the parties' home by removing and selling light fixtures, cabinets from walls, a toilet, and a majority of furnishings from the home.  As a result of this hearing, the court ordered custody be immediately transferred to Husband, Wife pay the outstanding utility bills, and Wife immediately vacate the property.  In addition, Wife was ordered to respond to all discovery requests by January 3, 2017.  On about February 23, 2017, Wife's third lawyer was relieved as counsel.  Husband returned the children to Wife after only one day and did not pay child support from that time forward.  However, Husband assumed the mortgage obligation from the time of the December hearing until the time the home was sold.   Husband testified he only returned the children because Wife had alienated the children to such an extent that Husband had absolutely no control of them, and actually feared them based upon their fabrications to the police.[1]

Mediation was thereafter scheduled for March 3, 2017, but Wife did not attend, claiming she had not received notice.  Husband requested a final hearing, which was scheduled for May 18, 2017.  On the date of trial, Wife appeared with her fourth lawyer, who moved for a continuance, claiming Wife had not been properly notified of mediation or the final hearing.  The court determined Wife had been properly notified of mediation and that she had elected not to appear.  The court

---

[1] One of the children ran away and when picked up by police indicated she would rather go to foster care than live with her father.  She kicked a police officer and eventually went to the Department of Juvenile Justice for a short time.  Another child told police Husband had hit him and the other children supported this story although police discerned from the child's appearance the story was implausible.

acknowledged notice of the final hearing had been served on the parties' daughter, so out of an abundance of caution, the trial was continued until July 10, 2017.

A hearing on Husband's motion to compel discovery and show cause was held on June 5, 2017. At the time of the June 5, 2017 hearing, Husband had received from Wife only copies of what *he* had presented at previous hearings. Accordingly, the court ruled that unless Wife complied with discovery requests by June 16, 2017, she would not be allowed to testify on the issues of alimony, child support, equitable apportionment, or attorney's fees, and she would not be allowed to offer any evidence regarding her income, alimony, or equitable apportionment. As of June 16, 2017, Wife had still not provided the requested bank statements; she had still not verified her income as had been requested; and she had still not produced full tax returns.

At the final hearing, the family court was notified Wife had moved marital funds into at least four separate accounts at the Navy Federal Credit Union (NFCU), said accounts all being in Wife's name, though each account also bore an additional name, one for each of the parties' four children. The NFCU accounts were opened with funds transferred from another account Husband discovered during the pendency of the action containing more than $200,000.

After Wife disclosed more specific information about the NFCU accounts, the court recessed the final hearing until the following morning, July 11, 2017. The family court ordered Wife to provide to Husband's counsel the names, account numbers, phone numbers, and any other pertinent information relative to these accounts. The family court further issued an order restraining Wife from transferring the funds, from dissipating the accounts, or from accessing these funds in any manner pending the issuance of a Final Order. Wife was also ordered to obtain a verified social security statement indicating how much she received from social security each month.

The following morning, Wife's counsel advised the court Wife had been hospitalized, and she requested a continuance. Husband then informed the court that after the previous day's hearing, Wife had driven to Charleston and attempted to withdraw the funds from the NFCU. However, NFCU had placed a temporary hold on the accounts, and Wife was denied access to the funds. After Wife returned from Charleston, she drove herself to the emergency room at Grand Strand Regional Medical Center.

Wife's request for a continuance was denied, and the court noted that even if Wife had been present, her ability to testify or present any evidence in regards to any of the contested issues would have been severely limited, based upon her refusal to comply with discovery after several orders to compel had been issued.  This was based not only on the order following the June 5, 2016 hearing, but also the court's warning from the prior day of the final hearing wherein the court was still considering the severity of limitations it would place on Wife's testimony.  The GAL was excused from attendance to locate Wife and after he returned to court, he noted Wife had been in the emergency room at Grand Strand Regional Medical Center and that when he saw her, she was in the process of being discharged.  However, she had never actually been admitted to the hospital.  The GAL noted that he was able to have a "lucid, normal conversation [with Wife] just like every other conversation I had with her."

At trial, Husband testified as to various issues including custody, child support, asset valuation, and equitable division.  Husband presented a realtor, Glenn Hellofs, who testified as to the valuation of the marital home, the GAL who testified as to custody, and a friend of Husband who testified as to the parties having lived separate and apart for one year.  Following trial, the family court issued an order granting a divorce on the grounds of one year's continuous separation, awarding Wife custody of the children, dividing the marital estate 50/50, denying alimony, and awarding child support in a lump sum in the form of an offset against Husband's equitable distribution interest.  Thereafter, Wife filed a motion to alter or amend the final judgement.  The court issued an order denying Wife's motion, though it did correct some clerical errors and reference additional evidence presented at trial to support its initial ruling. The amended Final Order was filed September 29, 2017.  This appeal followed.

**STANDARD OF REVIEW**

> [W]hile retaining the authority to make our own findings of fact, we recognize the superior position of the family court judge in making credibility determinations. Moreover, consistent with our constitutional authority for *de novo* review, an appellant is not relieved of his burden to demonstrate error in the family court's findings of fact.  Consequently, the family court's factual findings will be affirmed unless "appellant satisfies this court that the preponderance of the evidence is against the finding of the [family] court."

*Lewis v. Lewis*, 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011) (footnote omitted) (quoting *Finley v. Cartwright*, 55 S.C. 198, 202, 33 S.E. 359, 360-61 (1899)). "*Lewis* did not address the standard for reviewing a family court's evidentiary or procedural rulings, which we review using an abuse of discretion standard." *Stoney v. Stoney*, 422 S.C. 593, 594 n.2, 813 S.E.2d 486, 486 n.2 (2018) (per curiam).

## LAW/ANALYSIS

### I.     Mental Incompetence, Discovery Sanction and Continuance

### A. Mental Incompetence/Subject Matter Jurisdiction

On appeal, Wife argues the family court lacked subject matter jurisdiction over the parties' case because she was mentally incompetent and the family court did not appoint a GAL to represent her interests.[2]  We disagree.

"Mental incompetency 'in its ordinary meaning imports mental deficiency so great as to render one unable to comprehend or transact the ordinary affairs of life.'" *Thompson v. Moore*, 227 S.C. 417, 422, 88 S.E.2d 354, 356 (1955) (quoting *Edge v. Dunean Mills*, 202 S.C. 189, 195, 24 S.E.2d 268, 271 (1943)).  In *Zaragoza v. Zaragoza*, 309 S.C. 149, 151-52, 420 S.E.2d 516, 517-18 (Ct. App. 1992), the family court considered the wife's argument that her husband was incompetent. The husband had suffered a brain injury while in the armed forces and was receiving disability.  *Id*. at 150, 420 S.E.2d at 516.  He had lapses in memory and required assistance in managing some of his affairs.  *Id*.  However, he lived and traveled independently with some minor assistance from his mother.  *Id*.  The family court determined it would not equate the husband's disability with incompetence, and this court affirmed.  *Id*. at 152-53, 420 S.E.2d at 518.

In the present case, Wife demonstrated unwise and sometimes illogical behavior. However, her conduct was generally directed at prolonging and complicating the divorce proceedings and attempting to maintain marital assets for her own benefit. Although the family court ordered a psychological examination for Wife, that examination was based on the GAL's recommendation and was likely geared

---

[2] "The court shall appoint a guardian ad litem for a minor or incompetent person not otherwise represented in an action or shall make such order as it deems proper for the protection of the minor or incompetent person."  Rule 17(c), SCRCP.

toward determining parental fitness more so than the larger question of competence. Additionally, it appears Wife eventually completed a partial psychological evaluation. However, information about that process is not included in the record. At trial, Husband was asked if he was aware of Wife's traumatic brain injury, to which he responded "that is what she says." The only evidence in the record regarding Wife's physical, mental, or emotional state was Husband's testimony that Wife had "issues" and goes to the Department of Veteran's Affairs for medications. Whatever Wife's issues, they do not appear to have rendered her unable to communicate with her attorneys, the family court, or the children's GAL or to understand the family court's instructions. In fact, Wife understood the nature of the proceedings so well that she surreptitiously manipulated the parties' assets, not to mention the children's attitudes toward Husband, in a clear attempt to gain an advantage whenever the family court issued an order that preserved the status quo. This included selling fixtures from the marital home, charging legal fees to credit cards in Husband's name, withdrawing and carefully hiding funds from the marital joint checking account, and secreting funds in the NFCU accounts.[3] Notably, in spite of her lack of cooperation in the divorce case, neither Wife, nor her numerous counsels of record, put forward Wife's competence as an issue.[4] Based on all of the foregoing, we find the family court did not err in failing to appoint Wife a GAL.

## B. Discovery Sanctions

Next, Wife contends the family court erred in imposing discovery sanctions that prevented her from offering evidence as to the issues of alimony, child support, and equitable division. We disagree.

---

[3] The record suggests Wife ably familiarized herself with the federal government's requirement that banks report withdrawals of $10,000 or more as she withdrew funds from disputed accounts, discussed later in this opinion, in increments of $9,999. *See* 31 U.S.C. § 5316(a) (2018); 31 C.F.R. § 1010.311 (2019).

[4] Husband contends Wife's competency argument is unpreserved as it was not raised to the family court until Wife's motion for reconsideration. Wife denominates the issue as one of subject matter jurisdiction which would negate Husband's contention. We are not convinced Wife's position is correct as "[t]he family court has exclusive jurisdiction . . . to hear and determine actions for divorce a vinculo matrimonii . . . ." S.C. Code Ann. § 63-3-530(A)(2) (2010). Regardless, as seen from the discussion supra, we conclude the family court did not err as to this issue.

"If a party fails to obey an order to provide or permit discovery, the trial court may impose sanctions such as striking pleadings, dismissing the action, or rendering a default judgment." *Griffin Grading & Clearing, Inc. v. Tire Serv. Equip. Mfg. Co.*, 334 S.C. 193, 198, 511 S.E.2d 716, 718 (Ct. App. 1999) (citing Rule 37(b)(2)(C), SCRCP)). "When the court orders default or dismissal, or the sanction itself results in default or dismissal, the end result is harsh medicine that should not be administered lightly." *Id*. "Therefore, the sanction should be aimed at the specific conduct of the party sanctioned and not go beyond the necessities of the situation to foreclose a decision on the merits of a case." *Id*. at 198, 511 S.E.2d at 719. "Where the sanction would be tantamount to granting a judgment by default, the moving party must show bad faith, willful disobedience or gross indifference to its rights to justify the sanction." *Id*. at 198-99, 511 S.E.2d at 719.

Numerous discovery violations were delineated in the family court's order and the record demonstrates Wife's noncompliance was willful. Wife was forewarned in an order from the June 5, 2017 hearing that this sanction would be issued if she continued refusing to produce discovery or comply with orders of the court by June 16, 2017. In spite of this order, the family court left open the question of the parameters of Wife's testimony at the conclusion of the first day of the final hearing and instructed Wife to bring her discovery information to court the following day. Wife did not avail herself of the family court's offer, but instead failed to attend the second day of the hearing.

In the absence of Wife's discovery, the family court conducted in-court inquiries in an attempt to verify Wife's disability benefits. Husband presented evidence of the values of other assets and testified as to his estimate of the value of other items. Husband presented a realtor who testified to the value of the marital home both before and after Wife's damage to the home. Unquestionably, Wife was prejudiced by the discovery sanctions. However, Wife was forewarned of the sanctions and continued to disregard the family court's instructions. Consequently, we are not persuaded the family court erred as to this issue.

### C. Continuance

Next, Wife maintains the family court erred in denying her request for a continuance on the second day of the final hearing because she was at the hospital in the emergency room. We disagree.

Rule 40(i)(1) of the South Carolina Rules of Civil Procedure provides "[i]f good and sufficient cause for continuance is shown, the continuance may be granted by

the court." The family court determined Wife's trip to the hospital was a ruse designed to delay the proceedings and as Wife would not be permitted to present evidence due to the discovery sanctions, the proceedings could continue in her absence. Wife was represented by counsel the second day of trial, and the family court sent the children's GAL to the hospital to attempt to ascertain Wife's status and wishes with regard to the custody of the children. The GAL indicated Wife was notably under stress but was capable of communicating clearly and logically with him. Based on all of the foregoing, we conclude the family court did not err refusing to grant Wife a continuance on the second day of trial.

## II.  Lump Sum Child Support Credit Against Equitable Distribution

Wife contends the family court erred in awarding her a lump sum for child support for the parties' four children. She also contends the court erred in executing that award through a setoff against Husband's equitable portion of the marital estate. We agree.

The family court awarded Wife child support in the amount of $64,640. This represented the total child support amount for each of the parties' four children for the duration of each child's minority. The amounts were based upon the child support guidelines as calculated by Husband. Husband also included an additional $10,000 "cost of living" in reaching the final lump sum. The family court determined this award would be unmodifiable and would be awarded as an offset against Wife's portion of the marital estate. These decisions were driven by Husband's wishes to avoid future litigation and entanglement with Wife.

The issue of lump sum child support has not been directly addressed in South Carolina. Other jurisdictions have different positions on the subject. In North Carolina, lump sum child support is specifically allowed pursuant to statute. *See* N.C. Gen. Stat. § 50-13.4(e) (West, Westlaw through S.L. 2020-74) ("Payment for the support of a minor child shall be paid by lump sum payment, periodic payments, or by transfer of title or possession of personal property of any interest therein, or a security interest in or possession of real property, as the court may order."). Georgia courts have concluded that although lump sum child support is not specifically allowed pursuant to statute, it is not precluded. In *Mullin v. Roy*, the court stated:

> Nothing in OCGA § 19-6-15 expressly precludes lump-sum child support awards. To the contrary, the statute as amended explicitly authorizes trial courts to exercise

> discretion in setting the manner and timing of payment. *See* OCGA § 19-6-15(c)(2)(B) (requiring trial courts to "[s]pecify . . . in what manner, how often, to whom, and until when the support shall be paid"). This language is certainly broad enough to encompass an order to pay a child support obligation all at once.

700 S.E.2d 370, 372 (Ga. 2010) (alteration and omission in original).

Conversely, Florida and Mississippi have specifically disallowed lump sum support. "Mississippi law is clear that 'that child support should *never* be awarded in lump sum.'" *McCall v. McCall*, 2019 WL 350628 at *3 (Miss. Ct. App. Jan. 29, 2019) (quoting *Pittman v. Pittman*, 909 So. 2d 148, 153 (Miss. Ct. App. 2005)). In analyzing the issue in Florida, the district court of appeals explained:

> First, we reverse the trial court's lump sum child support award to the former wife, because no statutory or precedential authority allows for such a lump sum child support award. If the Florida Legislature intended to permit a lump sum child support award, then perhaps the Legislature would have included such a provision within the child support provisions of section 61.30, Florida Statutes (2016), as it did within the alimony provisions of section 61.08(1), Florida Statutes (2016). . . . [I]nstead of a lump sum child support award, the trial court may consider sequestering the former husband's assets to provide security for the child support award.

*Masnev v. Masnev*, 253 So. 3d 638, 639 (Fla. Dist. Ct. App. 2018).

Like Florida, South Carolina makes no specific provision for lump sum child support awards although it does so for alimony. *See* S.C. Code Ann. § 20-3-130(B)(2) (2014) (explaining the nature and purpose of lump sum alimony). In *Mitchell v. Mitchell*, 283 S.C. 87, 92-93, 320 S.E.2d 706, 710 (1984), the court affirmed a $400 per month child support award. The wife was to retain, in an interest-bearing account, the husband's one-half of the proceeds from the sale of the marital home, with her having the right to withdraw monthly $400 in interest and principal to satisfy the husband's support payment. *Id*. at 89, 320 S.E.2d at 708. This arrangement still provided for periodic child support but sequestered the

funds to provide security for the child.[5]  Securing an award is permissible under certain circumstances.  *See* S.C. Code Ann. § 20-3-160 (2014) ("In any action for divorce from the bonds of matrimony the court may at any stage of the cause, or from time to time after final judgment, make such orders touching the care, custody[,] and maintenance of the children of the marriage and what, if any, security shall be given for the same as from the circumstances of the parties and the nature of the case and the best spiritual as well as other interests of the children may be fit, equitable[,] and just.").

After considering the relevant law and the facts of this case, we conclude the family court's lump sum child support award must be reversed as there is no statutory or precedential authority in South Carolina for a lump sum award. Although the court may create a trust or require other security to protect child support payments, such device is generally used to ensure the asset will not be dwindled away by the supporting parent.  In this case, the lump sum was not placed in any secure asset for benefit of the children but was simply credited against Husband's equitable share at his request to diminish the possibility of future conflict with Wife.  We agree with the family court that Wife's behavior warrants making certain arrangements to minimize her ability to file litigation simply for the sake of harassing Husband.  However, the lump sum award is not an appropriate vehicle for accomplishing this goal.  Furthermore, the child support award in this case was deemed unmodifiable.  This is contrary to the instruction in section 20-3-160 providing the family court retains authority to modify orders touching the maintenance and security of children even after final judgment.

Although we are reluctant to remand a case in which the parties have obviously suffered such a fractured relationship, we must.  Unwinding the matter of the lump sum child support and offset will be complex.  On remand, the family court should effectuate a 50/50 division of the marital estate in keeping with the other modifications in this opinion and bearing in mind that any offset to Wife for child support is eliminated.  Furthermore, the family court should calculate any unpaid child support Husband owes to Wife.  Because the child support award was heretofore unmodifiable, the family court should take testimony and evidence from the parties as to any substantial or material change in circumstances that have occurred *since the final hearing*.[6]  Normally, a party would be required to file and

---

[5] The wife did not appeal the manner in which the award was to be administered, just the monthly amount of the award.

[6] We affirm the family court's original calculation of $1,070 as the amount of monthly child support as it was based on the information provided at trial and the

prove a change in circumstances; however, the complexity of setting support and correcting the offset from the award of equitable division may require a full evaluation of the parties' and their children's present circumstances. The family court should use this information to determine any accrued child support and the amount of Husband's support obligation going forward. Any accrued child support payments should be paid to Wife as the family court deems appropriate for Husband's circumstances.

## III. Equitable Distribution

### A. Marital Residence

Next, Wife argues the family court erred in valuing the marital residence at its prelitigation value and in awarding Wife the home as part of the equitable division. We disagree.

The family court valued the martial residence at $265,000 based on the testimony of realtor Glenn Hellofs. This was his estimate of the value of the house prior to Wife's selling many of the fixtures in the home, damaging it, and otherwise failing to care for it.[7] After her misconduct, the precise date of which is uncertain, Hellofs valued the marital residence at $185,000. $110,000 was owed on the home's mortgage. The family court awarded Wife the devalued asset to hold Wife accountable for her destructive behavior. This distribution put Wife in the position of absorbing the entire cost of the devaluation in the home—$80,000. While this is a harsh penalty to Wife, we are not persuaded the family court erred in its decision.

In *Dixon v. Dixon*, the husband had intentionally devalued his business after the filing of litigation to the point of bankruptcy. 334 S.C. 222, 228-35, 512 S.E.2d 539, 542-44 (Ct. App. 1999) (per curiam). The family court awarded the husband the business in the parties' equitable division and assigned the business, C&R, its prelitigation value. *Id*. at 233-35, 512 S.E.2d at 545. In affirming this decision, the court of appeals explained:

_____

child support guidelines. Changes may include the emancipation of any of the children or other substantial changes in Husband's or Wife's financial circumstances.

[7] The GAL's report suggest the damage to the home may not be as significant as described by Husband and Hellofs. However, the GAL acknowledges the parties' home would require some fairly substantial renovations to sell for what it is potentially worth.

Had C & R been in existence at the time of the final hearing, it likely would have been awarded solely to the Husband, given his importance to the business and the Wife's minimal involvement in the day-to-day operations. Other marital assets would have been awarded to the Wife to bring the equitable division in line with the percentage allocation of the estate as determined by the family court. In this case, however, to assess the entire value of C & R against the Husband's share of the marital estate will have severe consequences. The value we have assigned to C & R, although an accurate determination of its value at the time of the commencement of this action, is nonetheless an artificial value in one sense, given that C & R in fact no longer exists. Thus, every dollar of C & R's value that we assign to the Husband amounts to a dollar reduction in his realized share of the marital estate. Because C & R is the single largest asset in the marital estate, the Husband's share of the marital estate will be reduced dramatically.

However, were we to assess any portion of C & R's value against the Wife's share of the marital estate, we would be reducing her realized share of the marital estate. Thus, to assess *any* portion of the C & R's value against the Wife would reward the Husband for his economic misconduct and punish the Wife, who was completely without responsibility for the demise of C & R. Accordingly, we conclude that the only equitable way to allocate the value of C & R is to assess its entire value against the Husband's share of the marital estate.

*Id.* at 233-34, 512 S.E.2d at 545.

We note, this case is distinguishable from *Dixon* in some respects. In this case, Wife alleged adultery although it was not proven. In *Dixon*, the husband, the party who devalued the asset, was found to have committed adultery. *Id*. at 226, 512 S.E.2d at 541. Additionally, the parties had no dependent children in the *Dixon* case. *Id*. at 225, 512 S.E.2d at 540. In this case, Wife was responsible for the care

of the parties' four children.[8]  Nevertheless, Wife's economic misconduct was the cause of the devaluation.  This is a difficult issue, but overall we are not persuaded the family court erred in awarding Wife the marital home at its prelitigation value.

### B. Credit Card Debt

Wife argues the family court erred in holding her solely responsible for the $14,843 credit card debt accumulated post-separation.  We agree in part.

The equitable division statute[9]

> creates a rebuttable presumption that a debt of either spouse incurred prior to the beginning of marital litigation is a marital debt and must be factored in the totality of equitable apportionment.  When the debt is incurred before marital litigation begins, the burden of proving a debt is nonmarital rests upon the party who makes such an assertion.

*Wooten v. Wooten*, 364 S.C. 532, 546-47, 615 S.E.2d 98, 105 (2005) (citations omitted).

Husband maintained Wife made the charges at issue without his knowledge.  This appears to be the sole basis for the family court's decision according to the final amended order.  However, this does not in and of itself mean the charges did not benefit the marriage as Wife was maintaining the home and providing all the support for the children during this time period.  *See Thomas v. Thomas*, 346 S.C. 20, 27, 550 S.E.2d 580, 584 (Ct. App. 2001) ("Marital debt is debt incurred for the joint benefit of the parties regardless of whether the parties are legally jointly liable for the debt.") *aff'd as modified*, 353 S.C. 523, 579 S.E.2d 310 (2003).  Charges made post-separation but prelitigation would be presumed marital unless Husband rebutted that presumption.  Therefore, the family court erred in adopting Husband's position wholesale, without closer scrutiny.

---

[8] Husband never sought sole custody of the children but sought joint custody in the form of visitation.  As the record demonstrates, a shared custody arrangement was derailed by Wife's efforts to alienate Husband and the children.
[9] S.C. Code Ann. § 20-3-620 (2014).

Reviewing the credit card statements presented by Husband, we ascertain some charges were not in support of the marriage. Wife incurred charges totaling $5,350 for legal services presumably related to the parties' separation. These charges were obviously not in support of the marriage, household, or children. However, of the $14,843 at issue, $6,045.25 of the charges were incurred prior to the commencement of marital litigation for more generalized expenses that supported the family and household. Therefore, that amount, $6,045.25, should be considered marital debt and apportioned equally between Husband and Wife. The remaining debt—$8,797.75, constituting legal fees and post-litigation charges—are nonmarital debt and should be charged against Wife's portion of the equitable division.

### C. Marital Property Awarded to Husband—Joint Checking and Savings Accounts and Honda Odyssey Van

Wife maintains the family court erred in valuing and awarding certain assets to her as part of the equitable distribution. We agree in part.

> The ownership prong can potentially raise troublesome issues if the family court overlooks assets which should rightly be included in the marital estate, but which are non-existent on the date of filing due to a party's misconduct. Consequently, if a party attempts to unfairly extinguish ownership of marital property before the date of filing . . . , the family court must include that property in the marital estate. To do otherwise would "promote fraud, reward misconduct, and contravene legislative intent."

*Shorb v. Shorb*, 372 S.C. 623, 632, 643 S.E.2d 124, 129 (Ct. App. 2007) (citations omitted) (quoting *Bowman v. Bowman*, 357 S.C. 146, 155, 591 S.E.2d 654, 659 (Ct. App. 2004)).

Husband and Wife maintained a joint savings account and a joint checking account at Bank of America prior to their separation. As to those assets, Husband testified as follows:

> Q.  Did you also have a joint savings account at Bank of America?
> A.  Yes, ma'am.

Q. And that reflects the amount of $49,674, also on
November 30, 2015.
A. Yes, ma'am.
Q. Is that correct?
A. Yes, ma'am.
Q. And did you make any withdrawals from that
savings account?
A. Yes, ma'am, I took $20,500.
Q. Thereby leaving in the checking account $37,797,
and $29,174; is that correct?
A. Yes, ma'am.
Q. And what happened the next day?

Husband testified Wife knew Husband was going to take funds from the savings account, so she attempted, albeit too late, to electronically withdraw *all* the funds from the savings account and checking account and thereby created an overdraft. However, when faced with the overdraft, Wife returned the $20,500 to the savings account. Keeping the funds she had remaining from both savings and checking, Wife opened a new account and then withdrew funds from that account in increments of $9,999 or less until the account was emptied by the date litigation was filed. According to Wife's testimony, she and the children lived off these funds and she had approximately $9,000 remaining at the time of trial. Wife testified Husband "took $20,700 of December 1, 2015. I called him because I went to pay the bills thinking this was a temporary separation. I said where did the $20,000 go? He said I took that for a nest egg for myself, the rest is yours and the kids'. It's yours."

Based on the testimony from both parties, the family court erred in valuing the joint savings account as of the date of separation instead of the date of filing. The parties had divided the account by agreement and taken individual ownership of their part prior to the filing of marital litigation. Wife did not unfairly attempt to extinguish ownership of the joint savings account so there is no basis for valuing the asset at a time other than the time litigation was commenced. *See Taylor-Cracraft v. Cracraft*, 417 S.C. 570, 581, 790 S.E.2d 423, 429 (Ct. App. 2016) ("Marital property subject to equitable distribution is presumptively valued at the date of the divorce filing."). At that time, the joint savings account had a value of zero.

With regard to the joint checking account, Husband's marital asset addendum also reflects the date of separation, not filing, for valuation. The record reflects Wife

withdrew the entire amount of the checking account post-separation and prefiling with no agreement from Husband. Then, she moved the funds into other accounts in amounts less than $10,000. Because she attempted to extinguish the account prefiling, the family court did not err in valuing the checking account at the time of the separation and awarding its value against Wife's share of the marital estate.

Finally, Wife also contends the family court erred in its valuing a Honda Odyssey Wife purchased approximately two months before the parties separated at $40,000. We disagree.

Husband testified Wife told him she paid $40,000 for the van. He listed the asset on his marital asset addendum with a $40,000 equity value. Although Wife could not offer any evidence about the van, she did not cross-examine Husband about his testimony. The only other evidence in the record relating to the van is Husband's Exhibit 2, a joint savings account statement, which indicates $20,000 was withdrawn on October 5, 2016. A hand-written notation indicates the withdrawal was made for "purchase of van by Wife." The dearth of evidence as to the *equity* in the van is regrettable. However, based on the record, we cannot say the family court's valuation is against the preponderance of the evidence.

## IV. Alimony

Wife argues the family court erred in denying her request for alimony. We disagree.

"Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage." *Allen v. Allen*, 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct. App. 2001). "It is the duty of the family court to make an alimony award that is fit, equitable, and just if the claim is well founded." *Id*.

> Factors to be considered in making an alimony award include: (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and nonmarital properties of the

parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; and (12) prior support obligations; as well as (13) other factors the court considers relevant.

*Id*. (citing S.C. Code Ann. § 20-3-130(C) (Supp. 2000)). "No one factor is dispositive." *Id*. at 184, 554 S.E.2d at 425.

"Generally, if on appeal there is inadequate evidentiary support for each of the factors, the appellate court should reverse and remand so the trial court may make specific findings of fact." *Griffith v. Griffith*, 332 S.C. 630, 646, 506 S.E.2d 526, 535 (Ct. App. 1998). "However, when an order from the family court is issued in violation of Rule 26(a), SCRFC, the appellate court 'may remand the matter to the trial court or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence.'" *Id*. at 646-47, 506 S.E.2d at 535 (quoting *Holcombe v. Hardee*, 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991)).

In this case, the family court did not address each of the factors specifically in declining to award alimony to Wife. The family court noted Wife received disability and social security benefits totaling $4,625 per month. Wife's emotional health, educational background, or earning potential do not impact the monthly amount of her income as her income is derived from sources independent of her current employability. Wife would have had more expenses than Husband based on the fact that she retained custody of the four children; however, she was prevented from admitting evidence as to precisely those expenses at trial because of her discovery violations.[10] Additionally, Wife will begin receiving monthly payments to contribute toward additional expenses she incurs on behalf of the children once the child support order is modified. Furthermore, the record reflects one reason Wife was solely responsible for the children was because she alienated them from Husband. The family court also emphasized that Wife possessed significant non-martial property—a $350,000 inheritance.

Wife repeatedly failed to exercise her right to participate fully in her own case. Had she done so, she may have proven a case for alimony. We are not persuaded

---

[10] Wife presented a financial declaration in June of 2016 that the family court may have considered, but if so, it is not referenced in the family court's order. In any event, the family court found Wife inherently uncredible.

the family court's decision was against the preponderance of the evidence presented.  Therefore, the family court's ruling on alimony is affirmed.

## V.    Attorney's Fees and Guardian Ad Litem Fees

Finally, Wife argues the family court erred in awarding Husband attorney's fees and in requiring her to pay the outstanding GAL fees.  We agree in part.

"In determining whether an attorney's fee should be awarded, the following factors should be considered: (1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; (4) effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992). The family court awarded Husband $20,000 of the $33,872.12 he accrued in attorney's fees based largely on Wife's misconduct during the course of the litigation.  Misconduct or uncooperativeness can be a factor in awarding attorney's fees.  *See Spreeuw v. Barker*, 385 S.C. 45, 73, 682 S.E.2d 843, 857 (Ct. App. 2009) ("Taking into account that [the f]ather's uncooperative conduct greatly increased the cost of litigation, we affirm the family court's award of $43,675 in attorney's fees to [the m]other."); *see also Donahue v. Donahue*, 299 S.C. 353, 365, 384 S.E.2d 741, 748 (1989) (holding husband's lack of cooperation serves as an additional basis for the award of attorney's fees); *Anderson v. Tolbert*, 322 S.C. 543, 549-50, 473 S.E.2d 456, 459 (Ct. App. 1996) (per curiam) (noting an uncooperative party who does much to prolong and hamper a final resolution of the issues in a domestic case should not be rewarded for such conduct).

The court noted the incomes of both parties, found Husband obtained beneficial results in the litigation, and concluded Wife would be able to pay this amount without diminishing her standard of living based in part on her inheritance.  The record demonstrates Wife made the litigation more difficult and expensive and although the record is not fully developed as to the financial conditions of both parties, we are not persuaded the family court erred in awarding Husband $20,000 in attorney's fees as the record demonstrates Wife has a large inheritance that places her in a stronger financial position.  However, the beneficial results analysis changes slightly in light of some of the modifications in this opinion.  Therefore, we remand the award of attorney's fees for reconsideration based on this factor.

Additionally, the parties had accrued $11,705 in GAL fees in the case.  At the time of trial, Husband had paid $4,625 of the fees.  After reiterating the difficulty Wife created in the case, particularly Wife's trip to the emergency room the second day

of trial, the family court ordered Wife to pay the outstanding $5,518.75. The family court did not address any factors outside Wife's misconduct in making this award. However, the record is sufficient to allow affirmance. *See Griffith*, 332 S.C. at 646-47, 506 S.E.2d at 535 ("[W]hen an order from the family court is issued in violation of Rule 26(a), SCRFC, the appellate court 'may remand the matter to the trial court or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence.'" (quoting *Holcombe*, 304 S.C. at 524, 405 S.E.2d at 822)).

Here, it appears Wife would be able to pay a portion of the GAL fees without significantly compromising her standard of living based again on her inheritance and disability/social security income. The issues in the case were very contentious, and the record demonstrates much of the GAL's time and effort was expended due to Wife's lack of cooperation and efforts to thwart Husband's relationship with the children. Consequently, we affirm the family court's decision as to the payment of the GAL's fees. *See Klein v. Barrett*, 427 S.C. 74, 89, 828 S.E.2d 773, 781 (Ct. App. 2019) (affirming the family court's finding that the wife should bear the majority of the fees and costs because she was in a superior financial position and because a signification portion of the GAL fees were incurred based on the wife's conduct during the litigation).

**CONCLUSION**

To summarize, we find the family court had jurisdiction to determine this case and affirm the family court's decision to deny Wife's continuance and impose discovery sanctions. Additionally, we affirm the family court's denial of Wife's request for alimony and the division of GAL fees. Further, we affirm the family court's valuation of the marital home and the Honda Odyssey van and the award of both to Wife. We also affirm the valuation date of the parties' joint checking account and its award to Wife.

We reverse and remand the family court's award of an unmodifiable, lump sum child support payment issued as a setoff against Husband's share of the marital estate. We also reverse the family court's valuation of the parties' joint savings account as of the date of separation. We modify the family court's decision regarding the credit card debt as discussed herein. We remand the case to the family court to recalculate the amounts owing between the parties based on the changes in the value of certain assets and the reversal of the lump sum child support award. Additionally and finally, we remand the issue of attorney's fees for

the family court to consider changes in the beneficial results obtained by Husband in light of this opinion.

**AFFIRMED IN PART AS MODIFIED, REVERSED IN PART, AND REMANDED.**

**WILLIAMS and HILL, JJ., concur.**